ORR & LINDSLEY SHOE CO. et al. v. NEEDLES et al.

(Circuit Court of Appeals, Eighth Circuit. May 20, 1895.)

No. 549.

1. SALE—DELIVERY—CHANGE OF POSSESSION.
    In an action against a marshal for a wrongful levy of an attachment upon goods alleged to have been sold and delivered by the attachment debtor to the plaintiffs, there was evidence tending to prove that prior to the levy the debtor had executed a bill of sale to the plaintiffs of the goods in question, which formed part of the stock in his store; that the goods were inventoried, and placed on shelves by themselves in the store, in charge of an agent of plaintiffs; and that, when the marshal visited the store to make his levy, the debtor informed him of the sale, and pointed out the goods to him. Held, that it was error to refuse to instruct the jury that, although the goods were not so marked that the marshal could have distinguished them by inspection, yet if the marshal had notice of the sale, and could have found out which were the plaintiffs' goods, it was his duty not to levy on them, and if, after notice, he refused to separate them, and did levy on them, he was liable; and that such error was aggravated by instructions that, even if the goods were sold to the plaintiffs, no title passed, unless they were so separated or marked that they could have been distinguished by inspection.

2. SAME—LEVY UNDER ATTACHMENT.
    Held, further, that if the marshal was not notified of the sale, and the goods were not so separated as to be distinguishable from the rest of the stock, the marshal would not be liable.

3. SAME—DECLARATIONS OF VENDOR.
    Held, further, that declarations or acts of the vendor of the goods, after the sale, could not affect the validity of such sale, in the absence of evidence of a fraudulent conspiracy between the vendor and vendee, or that such declarations or acts were authorized by the vendee.

In Error to the United States Court in the Indian Territory.

N. B. Maxey, George E. Nelson, Isaac H. Orr, Harvey L. Christie, and John L. Bruce filed brief for plaintiffs in error.

W. T. Hutchings, C. L. Potter, and Mr. Potter filed brief for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit which was brought by the plaintiffs in error, the Orr & Lindsley Shoe Company and Baer, Seasongood & Co., against Thomas B. Needles, the United

States marshal for the Indian Territory, and Philip Lewin, for a wrongful levy alleged to have been made by the defendant Needles, under a writ of attachment, on certain goods and chattels which are said to have been the property of the plaintiffs in error. The evidence in behalf of the plaintiffs tended to show that in November, 1889, W. Scott Cook, who was at the time a merchant doing business in the Indian Territory, was indebted to the plaintiffs in the sum of about $1,868; that for the purpose of paying said claim, on November 30, 1889, he executed a bill of sale in favor of the plaintiffs, conveying to them a quantity of boots and shoes, and men's and boys' clothing estimated to be of the value of about $1,900; that the goods in question formed a part of the vendor's stock of goods, then situated in his store at a place called "Fred," in the Chickasaw Nation; that the negotiations leading up to the sale were conducted in behalf of the plaintiffs by their traveling salesman John C. Martin; that the goods were selected by Martin, and inventoried, and that they were thereafter separated from the residue of the vendor's stock, and were placed on shelves by themselves in the vendor's store, and were left in charge of the vendor's brother, David F. Cook, who was empowered to sell the same at retail, and to account to the plaintiffs for the proceeds; that on or about December 16, 1889, the defendant Needles wrongfully seized the goods in question under a writ of attachment issued against W. Scott Cook in favor of certain attaching creditors; that prior to said levy the said W. Scott Cook advised the deputy marshal who was about to make the levy that a portion of the goods in his store had been sold and delivered to the plaintiffs. There was further testimony which tended to show that before the levy was made the vendor, Cook, pointed out to the deputy marshal the goods that had been sold by him to the plaintiffs, and their precise location in the store, but that notwithstanding such notice the marshal levied upon the entire stock of goods found in the storeroom, including the plaintiffs' goods, and took charge thereof, and remained in sole charge of the storeroom and the goods therein contained for some days, and until the store and the goods were totally destroyed by fire. The defendants, on their part, offered testimony which tended to show that no bill of sale, such as is above described, had ever been executed by Cook in favor of the plaintiffs, or that, if such bill of sale had been executed, the goods intended to be thereby transferred had not been separated from the residue of the vendor's stock, but were intermingled therewith, and with other goods of a like character and quality, so that, even if the bill of sale was in fact made, the agreement was wholly executory, and did not operate to pass title to any goods, as between the vendor and the vendees, much less to transfer title, as between the vendees and an attaching creditor of their vendor. The defendant Needles also offered testimony tending to show that when the levy was made no notice of the alleged sale was in fact given to him, or to his deputy; that no notice of the alleged sale was given prior to the fire, and that there were no marks of any kind on any of the goods; and that no portion of the goods were so separated from the rest as to indicate that they did not belong to the

defendant in the attachment, and were not a part of the general stock. The testimony being as above indicated, the plaintiffs, at the conclusion of the evidence, moved the court, among other things, to instruct the jury as follows:

"The court instructs you that, although you may believe from the evidence that the goods purchased by plaintiffs were not so marked or designated that the marshal could have distinguished them by inspection or examination, yet if you believe that the marshal had notice of the sale to plaintiffs of the goods sued for, and could have found out which were plaintiffs' goods, after such notice, then it was the duty of the marshal to have separated plaintiffs' goods from the remainder of the stock, and not levied on them; and if you find from the evidence that he had such notice, and refused to separate plaintiffs' goods, but levied on them, your verdict should be for the plaintiffs."

This request was refused, and the plaintiffs duly excepted. Thereafter, of its own motion, the court charged the jury as follows:

"But, in order for the sale between these people to have been complete, there must have been a change of possession; that is, there must have been a delivery, either actual or what we call 'constructive.' In order for a legal delivery to have been made in this case, it was the duty of Scott Cook and Martin, the agent of these plaintiffs, to separate or segregate from the whole stock of goods, the amount of goods actually purchased by the plaintiffs for the satisfaction of their debt. And if, therefore, you find that the plaintiffs in this case purchased these goods,—that is, that this man, Scott Cook, agreed with them that they should have so much of these goods to pay their debts,— yet if you find from the evidence in this case that these goods were not separated from the general stock of goods, or so distinguished or marked that the marshal, by inspection and examination, could have told the plaintiffs' goods from the general goods of the said Scott Cook, in that case plaintiffs could not recover, and you will find for the defendants."

The same direction, in substance, was repeated in the following instructions, which were likewise given by the court of its own motion:

"If you believe from the evidence in the case that there was a sale of a part of the goods, but that part was not separated from the balance of the stock, and so designated and marked that the marshal, when he went to make his levy, could determine by inspection and examination which were the goods of Scott Cook, and which were the goods of the plaintiffs in this case, in that case you will find for the defendant. So, in this case, to recapitulate briefly, the issues sharply defined are these: Plaintiffs are entitled to recover if a part of those goods were actually purchased by them in satisfaction of their debts, and those goods were so separated and designated and marked as to distinguish them from the balance of the stock. Defendants are entitled to recover if there was no designation and marks so that the goods could be distinguished."

We are of the opinion that the instruction first above quoted was applicable to the state of facts which the plaintiffs' testimony tended to establish, and that it should have been given as requested. We are also of the opinion that the instructions above quoted which were given by the court of its own motion were well calculated to mislead the jury, especially in view of the fact that the court declined to give the aforesaid instruction which was asked by the plaintiffs, or any other instruction of equivalent import. The law is well settled that when an officer, having a writ of execution or attachment to execute, is advised before the levy is made that certain goods of a third person have been mixed with property belonging to the defendant in the execution or attachment,

which he proposes to seize, it is the officer's duty to make reasonable efforts to ascertain and separate the same from the property of the debtor on which the levy is to be made. Unless such reasonable efforts are made to ascertain what portion of the general mass in fact belongs to third persons, and unless reasonable efforts are also made to separate the same, an officer cannot escape liability for a seizure of property which does not in fact belong to the defendant named in the writ. This is clearly the rule, except in those cases where the goods or chattels of one person have been intentionally mixed with the goods or property of another for some fraudulent or unlawful purpose. Wilson v. Lane, 33 N. H. 466; Smith v. Sanborn, 6 Gray, 134, 136; Treat v. Barber, 7 Conn. 274, 280; Weil v. Silverstone, 6 Bush, 698. In the present case there was not only evidence tending to show that a portion of the stock of merchandise contained in the storeroom had been sold and delivered to the plaintiffs, and separated from the residue of the stock, but there was evidence which also tended to show that notice of the sale was given to the officer, and that the goods sold were pointed out to him, so that he could have readily distinguished the same, if he had seen fit to do so. Under these circumstances, we think that the court erred in refusing to give the instruction asked by the plaintiffs which has been heretofore quoted.

The error committed in refusing the aforesaid instruction was aggravated by the several instructions given by the court of its own motion. It will be observed that these instructions declared, in substance, that, even though certain goods were sold by Scott Cook to the plaintiffs, yet that the sale was incomplete, and that no title passed, unless they were "separated from the general stock of goods, or so distinguished or marked that the marshal, by inspection or examination, could have told the plaintiffs' goods from the general goods of Scott Cook." As the court did not attempt to define what it meant by the phrase, "separated from the general stock of goods," or "separated from the balance of the stock," these instructions were probably understood to mean that the sale was incomplete, and that no title passed to the plaintiffs, unless there was such a visible separation, segregation, or marking of the goods sold that the marshal could tell, without extrinsic aid, by merely looking through the stock, that a portion of the goods were not the property of the defendant in the attachment, but were the goods of a third person. The jury very likely inferred that although everything had been done that the plaintiffs' witnesses described, in the way of selecting and inventorying the goods, and placing them on separate shelves, yet, inasmuch as a stranger coming into the store would not be able to tell without inquiry, simply by looking at the stock, which were the plaintiffs' goods, the sale was therefore incomplete, and that no title vested in the plaintiffs, as against an attaching creditor. It admits of no doubt, we think, that if the goods had been selected, inventoried, and placed by themselves in a particular part of the store, in charge of the plaintiffs' agent, David F. Cook, as the evidence tended to show had been done, then the sale was fully executed, and the title to the goods became vested in the plaintiffs,

v.67 F.no.8—63

even though they remained in the vendor's store, and even though a stranger entering the storeroom might not be able, by a casual examination of the stock, and without inquiry, to identify the plaintiffs' goods as being their property. By the acts aforesaid the parties to the contract had clearly manifested their intention that the goods should become the property of the vendees, and the law always gives effect to such an intention when it is thus disclosed. Cattle Co. v. Mann, 130 U. S. 69, 77, 9 Sup. Ct. 458. See, also, the numerous cases cited on this point in 21 Am. & Eng. Enc. Law, p. 476. Moreover, upon the assumption that a sale and delivery of the goods had been consummated in the manner described by the plaintiffs' witnesses, the marshal had no right to disregard the notice of the sale, and to make a levy upon the entire stock, upon the theory that the sale was incomplete because the goods were not separated or marked in such a way that he could identify the same by a mere inspection of the stock. The instructions now under consideration were therefore erroneous and misleading.

Inasmuch as the case must be remanded for a new trial, it may be well to add that in our opinion the marshal cannot be held liable for the alleged trespass if it is true, as the testimony in his behalf tended to show, that he did not have any verbal notice of the alleged sale prior to the levy, and if it be also true that at the time of the seizure of the goods now in question they had not been separated, set apart, or marked in such manner as to distinguish them in any respect from the residue of the stock, or to warn the officer that they belonged to a third party, and were not the property of the defendants named in the writ of attachment. On a retrial of the case the defendants will be entitled to have this issue submitted to the jury, under appropriate instructions, but it should be submitted in connection with instructions which fairly present the issue raised by the plaintiffs' evidence, as heretofore indicated.

The record before us contains numerous other assignments of error, which we need not notice in detail. None of the exceptions taken to the admission and rejection of evidence can be noticed, as the plaintiffs have failed to quote in the assignment of errors the full substance of the evidence admitted and rejected, as rule 11 of this court requires. 11 C. C. A. cii. They have also failed to point out the pages of the record where the objectionable testimony can be found. Under these circumstances, we are under no obligation to consider the alleged errors last alluded to, and in the present instance we shall decline to do so.

One of the most important errors assigned, other than those heretofore mentioned and considered, consists in the refusal of the court to give the following instruction, which was asked by the plaintiffs:

"The court further instructs the jury that if you shall believe from the evidence that there was an actual and completed contract of sale and delivery of the property for the value of which this suit is brought, by said Cook to these plaintiffs, and the said property was invoiced, and set aside from the rest of the stock, and placed in charge of a person as the agent or bailee of these plaintiffs, then, although the property remained in the same storehouse where it was at the time of the sale, and said storehouse remained in the possession of said Cook, then the validity of the sale could not be destroyed:

by the levy of the attachments thereon, and could not be destroyed by any declarations made by said Cook, or acts done by him, unless shown to have been authorized by plaintiffs, or that they knew of them, or in some manner ratified them."

The concluding paragraph of this instruction undoubtedly stated a correct rule of law, which the plaintiffs were entitled to have declared, inasmuch as certain declarations and acts of Scott Cook subsequent to the sale were given in evidence by the defendants which tended to impeach the bill of sale under which the plaintiffs derived title. It is undeniable that declarations made to third persons by a vendor of property after the sale and delivery thereof has been consummated are not admissible against his vendee, to impair the latter's title, unless there is independent evidence tending to show that the vendor and vendee have entered into a fraudulent conspiracy of some sort, so that the statements of one are admissible against the other, or unless the vendor's statements were authorized or subsequently ratified by the vendee. The rule of evidence in question is well established and elementary. Manufacturing Co. v. Creary, 116 U. S. 161, 6 Sup. Ct. 369. In the present case the declarations in question appear to have been admitted by the trial court for the purpose of impeaching the vendor, Scott Cook, who was called as a witness by the plaintiffs. But even if the declarations of Cook were admissible on that ground, and if a proper foundation was laid for admitting them, for the purpose of impeaching him, still we think that the court might very properly have instructed the jury that the statements made by Cook to third parties after the alleged sale and delivery of the goods were not binding on the plaintiffs, and were not admissible for the purpose of defeating their title.

In conclusion, it will not be out of place to say that the record shows that the controversy between the parties lies within a narrow compass, and that the trial should be carefully confined to the issues disclosed by the record. The plaintiffs rely for a recovery solely on the ground that certain goods were sold and delivered to them on November 30, 1889, for the sum of $1,868.24, then due to them from the vendor. They contend that the goods sold were selected, inventoried, and set apart by themselves in the vendor's store, and that the marshal had notice of these facts prior to the levy, but refused to recognize the transaction as a valid or consummated sale. The plaintiffs do not claim title to the goods in controversy under or by virtue of any conveyance or mortgage executed prior to November 30, 1889; and whether such prior mortgage or conveyance, if one was executed, was valid or otherwise, is an immaterial issue, so far as the case at bar is concerned. The defendants, on the other hand, evidently rely for a defense upon the ground that, although a bill of sale may have been executed at the time alleged, yet that there was no selection of the goods intended to be sold, or separation of the same from the residue of the stock. They contend that they remained mixed with other goods of the debtor, of like kind and quality; and that the marshal made the levy in utter ignorance of the plaintiffs' rights under the alleged

bill of sale. Whether the one or the other of these contentions is well founded in fact, is the question that should be submitted to the jury on a retrial of the case, and all extraneous issues should be excluded, as far as possible. We are led to make these observations because a number of instructions appear to have been asked which, in our judgment, were unnecessary, and, if given, would merely have diverted attention from the most important issue in the case. For the reasons already indicated the judgment is reversed, and the case remanded for a new trial.