CLARA E. PODLECH, RESPONDENT, *v.* PATRICK PHELAN AND STEPHEN HAYS, APPELLANTS.

PLEADING—PAROL EVIDENCE—LANDLORD AND TENANT—AUTHORITY OF SUBTENANT—TRADE FIXTURES—REMOVAL.

1. Plaintiff, a lessee of a hotel, sublet to one Hall, who shortly after the lease, desired to remove a partition and to put in another, and to replace the stoves by a steam radiator; the old partition and stoves being at the time the property of the plaintiff who agreed that this might be done, provided that the property newly put in should belong to plaintiff. Just prior to the expiration of the lease, plaintiff sold, and undertook to remove the partition and steam heater, which she claimed became hers by virtue of the agreement with Hall and was prevented from so doing by defendants who set up a subsequent agreement with Hall, by which they claimed that the title to the property in the partition and steam heater passed to them. It was not shown that plaintiff assented in any way to this last-named agreement. *Held*, that the answer of defendants, which merely denied that

they "wrongfully or unlawfully" converted the property in question, was an admission of its conversion.

2. That testimony of an oral agreement between Hall and plaintiff was competent, since it was made subsequent to the written lease, and after Hall had taken possession of the hotel under it.

3. That Hall, a subtenant under plaintiff, had no authority to bind her by any agreement to pass title to the fixtures to defendants, as long as plaintiff was not a party to such agreement, and did not assent to it.

4. That, although the partition in question was not fastened to the plastering, it was placed in the building for convenience of business and trade, and was used as a screen, and, as such, was a trade fixture subject to the right of removal.

5. That the wrongful and threatening conduct and acts of one of the defendants, acting for all in refusing to allow plaintiff to remove the fixture, was a sufficient excuse for the failure to remove it before the expiration of the lease. A wrong-doer should not be permitted to gain an advantage by reason of his wrongful acts against one he has injured.

(No. 614. Decided April 10, 1896. 44 P. R. 838.)

Appeal from the district court of the Third judicial district, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Action by Clara E. Podlech against Patrick Phelan and another for the conversion of cetrain trade fixtures. From a judgment for plaintiff, defendant appeals. *Affirmed.* The facts are set forth in the opinion.

*W. C. Hall,* and *Booth, Lee & Gray,* for appellants.

There is no evidence whatever showing that she ever attempted to remove the furniture and fixtures, that she now claims in this suit, from the leased premises during the term of the lease. The tenant cannot remove fixtures after the expiration of the tenancy. See section 116 of Gear's Landlord and Tenant; Lawson's Rights and Remedies, vol. 6, pp. 4726-7 and cases cited.

On page 5 of the abstract will be found Mrs. Podlech's testimony, as follows:

"We had taken a piece of it and put it in the cellar; afterwards Hall put that up there for a cigar stand; that counter cost my husband from $125 to $150 when he put it in there. My husband put it in in 1876 or 1877, before I was married."

The lease under which Mrs. Podlech claims was made on the 11th day of June, 1887, and there is nothing in the lease which reserves to the lessee any fixtures or improvements whatever, so that the counters which were put in by Augustus Podlech in 1876 and 1877 as testified to by Mrs. Podlech would become the property of the lessors at the termination of the old lease, unless a special agreement was made in the new lease reserving them to the lessee. On this point see the following authorities:

A tenant who remains in possession after the expiration of his term, but under a new lease, containing no provision for the removal of fixtures, will be treated as having abandoned the right of removal. *Hedderick* v. *Smith*, 103 Ind. 203; 53 American Reports 509; Wood Landlords and Tenants, Sec. 532.

Taylor Landlords and Tenants, section 552, in which the author says:

"If the tenant, at the close of his term, renews his lease, or surrenders it, for the purpose of acquiring a fresh interest in the premises, he should take care to reserve his right to remove such fixtures as he had a right to sever under the old tenancy, for where his continuance in possession is under a new lease or agreement, his right to remove fixtures is determined, and he is in the same situation as if the landlord, being seized of the land together with the fixtures, had demised both to him.

*John M. Zane* and *Graham F Putnam*, for respondent.

MINER, J.:

This action is brought for the alleged wrongful and unlawful conversion by defendants of a certain partition, counters, steam heater, and boiler apparatus, belonging to the plaintiff, situated and used in the White House, in Salt Lake City, on May 2, 1893, of the alleged value of $600. The defendants answered, and denied that she was the owner, or entitled to the possession, of the property; "and, further answering deny that on said 2d of May, or any other day, the defendants, or either of them, wrongfully or unlawfully converted or took the said property to their own use, or deprived the plaintiff thereof, or to the damage of the plaintiff in the sum of $600, or in any sum whatever"; and alleged that the defendants and one Ezra J. Travis were the owners of, and in the possession of, said property, the same being fixtures, etc. It appears from the testimony that in June, 1889, the respondent, Mrs. Podlech, was the lessee of the White House, in Salt Lake City, from the defendants and one E. J. Travis, who are the owners of the property, and sublet the same, furnished, with the consent of J. E. Dooley, agent of the lessors, to one Hall, for a term of years. Among the furniture and fixtures of Mrs. Podlech in the hotel at that time were a number of stoves, two counters, and a glass and wood partition in the office. The partition was placed in the building by Mr. Podlech, at his expense, to separate the office from the dining room. It was not built in the plastering, but was used for the purposes of a screen. Shortly after making the lease Hall desired, for his own convenience, to make some changes in the hotel, and, among others, to remove the partition and put in another, and to replace her stoves by a steam heater. She agreed that he might do this; the new articles put in, replacing hers, to be of equal value, and to become her property, in place of the articles

removed by him. In pursuance of this arrangement, Hall removed the old partition, putting in a new one, and replaced the stoves with a steam heater. No change was made in the counters, the old ones being retained. In the spring of 1893, just prior to the expiration of the lease, respondent, desiring to sell her furniture and fixtures in the hotel, including these counters, the partition, heaters, and radiators, of which she had possession, with her other property there, was prevented from making the sale, or removing the property, by the conduct of appellant Hays, acting for himself and appellant Phelan, in claiming that they were the owners of these articles, and that she had no interest in them, and hence no right to sell them, and by forbidding her to remove them. To recover damages for this conversion, the present action was brought.

The articles, the title to which is here in issue, remained in the hotel during Hall's tenancy, and were taken into possession by the respondent, at the termination thereof, by his forfeiture for failure to pay rent. But two issues are made by the pleadings: (1) Was Mrs. Podlech the owner of the property? (2) The amount of her damages, if any. That the appellants converted the property is admitted by the answer, which merely denies that they "wrongfully or unlawfully" converted the same.

The appellant contends that the court erred in allowing respondent to answer the question, "How many radiators were there?" to which witness answered: "There were five; but, if Hall failed to pay the rent, these became mine. All the improvements became mine, by an agreement with Hall, if he failed to pay the rent, or forfeited his lease." The objection was that the evidence was irrelevant, immaterial, and incompetent, and that the lease was the best evidence. The testimony tends

13 UTAH—22

to show that the agreement referred to was a separate agreement, never reduced to writing, and made subsequent to the lease, and after Hall had taken possession of the hotel under it. It does not affirmatively appear that this agreement was not made subsequent to the written lease. The understanding of the court, as shown by its remark at the time, was that the agreement was subsequent to the lease; and, if this was not the fact, appellants should have made the evidence more explicit upon that point, so that this objection could properly be considered. No objection or exception was taken to the remark of the court at the time, and the impression was allowed to remain that the court stated the testimony correctly. We discover no error in this assignment.

The second, third, and fourth assignments of error substantially present the question as to whether the defendants could, by showing a contract between themselves and Hall as to the property in question, subsequent to that made by Hall with the respondent to the effect that the articles placed in the building by Hall to replace those belonging to respondent should be of equal value, and become her property, in the place of the articles removed by him, subordinated her right to theirs, and deprived her of the benefit of her contract with Hall. Respondent owned the lease. She simply sublet to Hall, and he was her subtenant, with no authority to bind her. Respondent's rights with defendants were governed by her contract with them under the lease. Hall was bound by his contract with her. By replacing her property with other property, she succeeded to its ownership, under the agreement; and no agreement between defendants and Hall with reference thereto, to which she was not a party, could bind her. Hall could not admit or bargain away her rights. This being so, it was imma-

terial what defendants paid towards the partition or improvements, or how they came to pay it, as based upon their arrangement with Hall, to which plaintiff was not a party. *Shoe Co.* v. *Needles,* 15 C. C. A. 142, 67 Fed. 990; *Kerr* v. *Kingsbury,* 39 Mich. 150; *Manufacturing Co.* v. *Creary,* 116 U. S. 161, 6 Sup. Ct. 369; *Bispham* v. *Brown,* 1 Harv. Law Rev. 299.

If respondent was present when a talk was had about enlarging the steam heater, or if she heard the conversation between Hall, Hays, and Germo, she is in no manner shown to have assented to the conversation. It does not appear that any agreement was made at the time defendants claim that she was present and heard the conversation. There was no error in striking out the answer that she simply heard talk about it, as long as she did not assent to the arrangement, if any were made.

The testimony of Hays, that he bought the counter afterwards, was not responsive to the question as to who claimed it. That he bought it afterwards was not important, under the issue.

In the view taken, the question as to whether Mr. Dooley ever made any written consent to the making of changes in the partition becomes unimportant. The changes were made, and rent was paid and accepted by him for several years thereafter.

We think the testimony is sufficient to justify the amount of the verdict. The testimony offered tends to show the value of the property to have been $600 and over.

The plaintiff had made a sale of the property in question to Mrs. Holt the day the lease terminated, and, when she came to execute the transfer of sale, she was informed by Mrs. Holt that defendant Hays claimed to be the owner of the articles in dispute, and that she could

not complete the sale unless respondent would throw off from the price $300 on account of Hays' asserted claim. Hays was called in, and insisted that he owned the property, because it was in the building and fastened to the floor. Hays was angry, and shook his fists in the face of respondent, and said that respondent had possession only until 12 o'clock that night, and after that the property was his, and he would take it. In consequence of this asserted claim, she did not sell the articles to Mrs. Holt, but deducted $300 from the price, on account of being forced to. It was then too late for her to remove the articles. Hays claimed they were his, and he would have them. As a consequence, this suit was commenced. It is evident from the testimony in this case that an attempt on the part of the respondent to remove the property might have resulted in a breach of the peace. Hays' asserted claim to the property was concealed from the respondent until it was too late to remove it before the expiration of the lease. The articles in question were placed in the building for the convenience of the business and trade. The question was submitted to the jury by the court, and they found by their verdict, in effect, that the articles were trade fixtures, subject to the right of removal. The question as to whether they should have been removed before the expiration of the lease was not raised in the trial court by any objection to the charge of the court, or otherwise, so far as the record shows. This objection is for the first time raised in this court. The lease embraced real estate, and had no reference to trade fixtures. The facts, taken in connection with Hays' wrongful conduct, acting for the defendants, present a sufficient excuse for not removing the property before the expiration of the lease. A wrongdoer should not be permitted to gain an undue advantage, as against the person he has injured. Under the circumstances of this

case, the evidence was sufficient to justify the verdict upon the last assignment of error. *Bruce* v. *Welch*, 52 Hun. 524, 5 N. Y. Supp. 668; *Heysham* v. *Dettre*, 89 Pa. St. 506; 6 Am. Law Rev. 463; *Bispham* v. *Brown*, 1 Harv. Law Rev. 299.

Upon the case as presented by the record, we find no reversible error. The judgment of the court below is affirmed.

BARTCH, J., concurs.

ZANE, C. J., did not sit in this case.