## HATTIE H. YOUNG, Appellant, v. CONSOLIDATED IMP. CO., Respondent.

LANDLORD AND TENANT—IMPROVEMENTS—REMOVAL—SPECIFIC PERFORM-
ANCE—EVIDENCE—ADMISSIBILITY—PLEADING.

1. A lease provided that the tenant could put up such additional improvements as it might consider advisable, and remove the same at the expiration of the lease. It was mutually agreed that the lease should be extended, with the right in the lessee to occupy the premises from month to month, each party to give a reasonable notice of a desire to terminate the tenancy. *Held,* that the extension of the terms and conditions of the lease included the right of the lessee to remove improvements placed thereon by him.

2. The fact that the lessee vacated the premises without removing the improvements will not preclude their subsequent removal, where before the vacation the lessor and lessee entered into negotiations for the purchase or rental of the improvements by the former, and the lessor requested the lessee not to remove them until an understanding could be reached, and such negotiations were still pending when the lessor commenced this suit to quiet title.

3. Such lessee was entitled to recover the improvements placed on the premises by him in an action by the lessor to quiet title.

4. Where, in an action by a lessor to quiet title, after vacation of the leased premises, the lessee claims the ownership of certain improvements, and the right to remove them under the lease, the question of the value of the improvements is not raised by the pleading.

Decided June 20, 1901.

Appeal from District Court, Salt Lake County.—*Hon. Ogden Hiles,* Judge.

Suit to quiet title by Hattie H. Young against the Consolidated Implement Company. From a judgment in favor of defendant, plaintiff appeals.

AFFIRMED.

On the twenty-seventh day of March, 1891, plaintiff, Young, being the owner of certain real estate, consisting of fifty feet by eleven rods on State street, in Salt Lake City, entered into a written agreement whereby she leased it to the defendant company for a term commencing on the first day of May, 1891, to and including the first day of January, 1898, for a monthly rental of $150 per month, to be paid in advance on the first day of each month. By the terms of the lease, it was agreed that the defendant company should have the privilege of putting up such additional buildings, sheds, and improvements on the land as it might consider necessary for the conduct of its business during the continuance of the lease, and pay all taxes assessed against it, and at the expiration of the lease remove all such buildings, sheds, and improvements without let or hindrance from the plaintiff. At the time of the lease there was an old building standing on the north twenty-six feet of the premises, built of adobe, which was called the "Blacksmith Shop," in the south part of which there were four windows, and a stairway leading to the second story, on the outside. The defendant company, on the first day of May, 1891, entered into possession of the said premises under its lease, and built a building over the south twenty-four feet of land by constructing a wall in front, and also a wall in the rear about seventy feet, parallel with the front wall, and also built against the adobe wall of the building on the south fifty feet, which was then leased by the defendant, and which was owned by Dunbar. The north side of the building was the adobe wall of the blacksmith shop. This structure was roofed,

and inclosed by the defendant, the joists supporting the roof being attached to the adobe wall. During the terms of the lease the rental agreed to be paid was reduced, by consent, to $125 per month. In December, 1897, and prior to the expiration of the lease, it was agreed between the parties that until different arrangements were entered into the lease should be extended beyond January 1, 1898, and that the defendant company might remain in possession of said premises, in accordance with the terms, covenants, and agreements of the written lease under which they occupied the same from month to month, at the same monthly rental that had been paid, and that either party was to give the other a reasonable notice of their desire to terminate the lease. Respondent company continued to hold possession of the premises and pay the rent under the extension of the original lease from January 1, 1898, until February 28, 1900. It also appears that on January 28, 1898, the defendant company wrote to the plaintiff respecting its rights under the lease to remove the buildings it had erected at a cost of $3,680, and offered to sell the same for $1,000, and apply the rent upon its payment at a reduced rental. On February 3, 1898, Mr. Young discussed the matter of the purchase of the improvements, but said he did not have the money to purchase them, but made no claim to the same, and said the defendant company could remain in possession of the premises under the old lease at $125 per month, each to give notice of its termination. On August 7, 1899, defendant's manager again wrote plaintiff concerning the improvements and the sale of them. Plaintiff replied that defendant had better write to Mr. Young concerning the matter, which was done, but no reply was received. In January, 1900, defendant's agent had a talk with Mr. Rossiter, plaintiff's authorized agent, with reference to the sale of the improvements, or, if the premises were rented to others, to allow each party a share of the rental. Mr. Rossiter said he would submit the matter to Young, and

said he thought some arrangement could be made, and requested that defendant make no effort to remove the improvements. In January, 1900, Mr. Rossiter informed defendant company, through its secretary, at a time when they were discussing the sale of the improvements, that when the defendant company vacated the premises he would communicate with Mr. Young, and that undoubtedly some arrangements would be made either to purchase or rent them, and divide the income, and that the defendant company should make no arrangements to remove the improvements. On the twenty-eighth of February, 1900, Mr. Rossiter requested defendant's officers not to disturb the improvements. The defendant company vacated the premises on the twenty-eighth day of February, 1900. On March 1, 1900, defendant company again wrote Rossiter, claiming the improvements, with a right to remove them, and suggesting an amicable arrangement. Rossiter saw Snow the same day, and requested that nothing be done towards removing the improvements until he could write to Mr. Young, who was in New York. Rossiter also spoke of renting the property for a saloon, and asked his opinion concerning it. On March 31, 1900, defendant's manager again wrote Rossiter, saying, if no arrangements could be made, he would remove the improvements on the following Monday. On April 2, 1900, Rossiter said to Snow that he had not yet heard from Young, and requested him not to take any steps to disturb the property, and he would arrange with his attorney for a conference. On April 3, 1900, this proceeding to quiet title was commenced, and an injunction served. A showing was made on the part of the defendant that the reason the company did not take away the improvements before it vacated the premises was because of the negotiations pending for a settlement of the claim, and because Rossiter, plaintiff's agent, had requested it not to remove them until Mr. Young could be heard from, and that it relied upon the request being made in good faith. The

plaintiff, in rebuttal, gave testimony tending to show its possession since the twenty-eighth of February, 1900, and that it had improved the property. Testimony was given tending to show that in December, 1899, notice was given to the defendant company that it should not remove any of the improvements on the property. Defendant gave notice that it would vacate the property on February 28, 1900. In January, Rossiter notified defendant not to remove any of the improvements, and in February, 1900, Rossiter says he notified defendant not to remove the property, but that he did not know at that time that the lease gave the defendant a right to remove the improvements, or that it claimed any interest in them. Other portions of the defendant's testimony were disputed. It also appears that defendant Moritz had rented the premises from plaintiff, with notice of the facts herein, but he did not appear, and was in default. Upon the findings made a decree was entered granting the defendant company the right to take and remove the improvements in question, and all parties were enjoined from interfering therewith. From this decree the plaintiff appealed.

*Messrs. Young & Moyle* for appellant.

*Messrs. Stephens & Smith* for respondent.

After stating the facts as above, MINER, C. J., delivered the opinion of the court:

This case presents several important questions, and they have been presented in a manner that is very creditable to the counsel representing the respective litigants. The appellant insists that the court erred in holding that the improvements belonged to the respondent company, and claims that, admitting a new verbal lease was entered into at the expiration of the first, with the same conditions except as to time,

the rental being payable from month to month until notice was given, then the respondent lost all claim it had to the improvements under the written lease, which expired January 1, 1898. It must be conceded that, the tenant had the right to remove the improvements it placed upon the property, under the conditions of the lease, during or before the expiration of the same. The lease provides that the lessee "shall have the privilege of putting up such additional buildings, sheds, and improvements as it may consider necessary for the conduct of its business during the continuance of this lease, and pay all taxes that may be assessed against the same, and at the expiration of this lease may remove all buildings, sheds, and improvements from said premises, without let or hindrance from the party of the first part."    The lease was extended by the parties in December, 1897, and before its expiration it was agreed between them, an the court found, that "it was mutually agreed by the plaintiff and the defendant company that said lease should be extended beyond the term for which it was originally entered into, to wit, January 1, 1898, and that the defendant company might continue in possession under and in accordance with the terms and covenants of said lease, paying the same rental that had been paid under the same, and occupy the premises from month to month, each party to give the other a reasonable notice of the desire to terminate the tenancy."    The requirement that the tenant shall remove the erections during his term, or at least before it surrendered its possession, is based upon the rule of public policy, and for the protection of the landlord, which is that the tenant shall not be suffered, after he surrenders the premises, to enter upon the possession of the landlord of a succeeding tenant, and remove the fixtures, which he might have taken away before the end of his term.    This rule is based upon the regard had for the rights of succeeding interests. Why the right of the tenant should be lost when he, instead of surrendering the possession, takes an extension

and renewal of the former lease, with a right to continue in possession under and in accordance with its terms and conditions, except as to time, is not apparent. No reason growing out of sound public policy can sustain a doctrine of that nature. On the contrary, the reason which saved the tenant his right to take the fixtures during the operation of the lease is quite as effective and influential to save them to him on a renewal of what was his before. As said by Judge Cooley in Kerr v. Kingsbury, 39 Mich. 154, 33 Am. Rep. 365: "What could possibly be more absurd than a rule of law which should, in effect, say to the tenant who is about to obtain a renewal: 'If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise, you will be deemed to abandon them to your landlord.'" The agreement entered into did not amount to the making of a new lease merely, but was an extension of the terms and conditions of the written lease for a longer period of time, including the right, under its conditions, to remove the improvements thereon during or at the expiration of its term, as evidenced by the extension. 13 Am. and Eng. Enc. Law, 651; Macdonough v. Starbird, 105 Cal. 15, 38 Pac. 510; Estabrook v. Hughes, 8 Neb. 496, 1 N. W. 132; Ross v. Campbell, 9 Colo. App. 38, 47 Pac. 465; Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907; Kerr v. Kingsbury, 39 Mich. 150, 33 Am. Rep. 362; Davis v. Moss, 38 Pa. 346; McCracken v. Hall, 7 Ind. 30. It was competent for the parties to give the improvement the legal character of realty or personalty, and the law will enforce their contract. In the present case the parties consented to the erection, and treated the improvements as personal property, with a right in the lessee to remove the same at the end of the term of the lease. Cooley, Torts, p. 503; Myrick v. Bill (Dak.) 17 N. W. 268; 13 Am. and Eng. Enc. Law, 655;

Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U. S. 416, 12 Sup. Ct. 188, 35 L. Ed. 1055.

Many authorities hold that where a new lease is entered into with the same terms as the former, and the rights of the tenant are not reserved, the right to remove the fixtures under the former is gone, unless exercised during the life of the first. This rule is urged by the appellant. Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173. As we have seen, the facts found and proved do not bring this case within the above rule. The findings are that the old lease was extended together with such rights as respondent held under it to remove the improvements.

2. Appellant contends that the respondent company vacated the property on February 28, 1900, knowing that the owner claimed the improvements, and that by failing to remove the fixtures it lost its right under the lease to remove them. The general doctrine in such case is that such fixtures or improvements should be removed before the expiration of the term of the lease. The application of this rule must depend upon the facts. In the present case the court found, and there is testimony tending to sustain such finding, that prior and subsequent to the vacation of the premises by the respondent company, on February 28, 1900, the two parties entered into negotiations, which were pending at the time of the vacation of the premises, and thereafter up to the time when this suit was commenced and the temporary restraining order was granted against the removal of the improvements; that such negotiations were entered into in good faith by the defendant company for the purpose of reaching an agreement either as to a purchase by the appellant of such improvements, or a rental of the same, and the payment to the defendant company of a proportion of the rent obtained from the same; that on and prior to the day when the premises were vacated, and during

such negotiations, up to the time when said suit was commenced, the appellant requested the defendant company not to remove the said improvements until they could reach an understanding for a sale or rental of the same then pending; that the defendant company complied with said request, with the intent and purpose of making an agreement for the purchase or rental of the premises, and was awaiting the termination of such negotiations, when the same were suddenly broken off by the appellant, and the injunction proceedings commenced restraining the respondent company from making such removal. In Ewell, Fixt., p. 141, it is said that, in cases where the tenant is wrongfully prevented by the acts of the landlord from removing fixtures before the expiration of his lease, the above rule as to removal before the expiration of the term does not apply, and the tenant has a reasonable time after the removal of the disability in which to remove his fixtures, although the term may have expired and he be out of possession. In Podlech v. Phelan, 13 Utah 333, 44 Pac. 838, this court held that the wrongful and threatening conduct and acts of the landlord in refusing to allow a tenant to remove fixtures on the day his term expired was a sufficient excuse for his failure to remove them before the expiration of his lease. In Chalifoux v. Potter, 113 Ala. 215, 21 South. 322, it was held that a delay for a reasonable time in removing fixtures until after the termination of the lease, during which time negotiations were pending between the parties as to the sale of the fixtures, did not deprive the tenant of his right of action therefor. Bruce v. Welch, 52 Hun. 524, 5 N. Y. Supp. 668; Mason v. Fenn, 13 Ill. 525; Bircher v. Parker, 43 Mo. 443; Bruce v. Welch (Sup.), 5 N. Y. Supp. 668; McCracken v. Hall, 7 Ind. 30. Under the findings of the trial court, the respondent company was prevented from removing the fixtures during the term of the lease by the acts and conduct of the appellant. After the appellant had induced the respondent to forego the

removal of the fixtures during the term, it would be unjust to allow her to obtain by her own wrongful conduct an undue advantage over the respondent, and deprive it of the right to take the property it had constructed on the premises with permission to remove it.

3. It is also claimed that it was error, under the circumstances, to grant a specific performance of the contract, even if the respondent company had a right to remove the property. We do not concur in this view. The enforcement of a specific performance of a contract is discretionary with the court, and such performance will be decreed unless it affirmatively appears that great hardship and injustice will be done to one party without considerable benefit to the other, or in cases where the public interests would be prejudiced thereby. Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 983. But the nature of the relief sought, and the rights of the respondent under the contract, do not necessarily imply that a specific performance is asked or was granted. The respondent simply asks to take away certain personal property it placed upon the land, which belonged to it originally, and which appellant agreed it should remove for the consideration named in the contract. It was competent for the respondent to seek a recovery of the property in the action brought against it by the appellant to quiet title to the improvements.

4. In its case on rebuttal, the appellant sought to show the value of the improvements placed upon the property by the respondent on the twenty-eighth day of February, 1898, as old lumber and brick, for the purpose of removal from the ground. Under objection, the evidence was rejected as being irrelevant, incompetent, and immaterial. The respondent constructed these improvements at a cost of about $3,700, with the conceded right to remove them. It offered to sell them to the appellant for $1,000. As we have seen, the appellant procured delay in the removal of the improvements, and finally com-

menced this action to quiet title, and obtained a temporary restraining order to prevent the removal of the same. The respondent in its answer claims the ownership and right to take and remove the personal property. The question of its value was not raised by the pleadings. As said in Seibel v. Siemon, 72 Mo. 532: "The refusal of a landlord to permit his tenant to remove erections made by the latter, under an agreement that he might do so, would smack of fraud and oppression." In such a case the wrongdoer, after having converted the property, should not be permitted to dictate in what manner he shall be made accountable for the wrong done. The appellant having converted personal property belonging to the respondent, the latter had a right to demand its restoration. We find no error in the ruling, as it is presented in the record; nor do we find any reversible error in the record that will justify a reversal or anything more than a modification of the judgment as to leaving the buildings in the condition they were when the improvements were made. The judgment and decree of the district court is affirmed, with costs, with the modification that such improvements so placed upon the property and attached to the adobe building of the appellant may be removed by the respondent within a reasonable time, but without material injury or damage to the building to which it is attached; and the respondent is also required to place the premises and adobe building in the condition they were in at the time such improvements were made, reasonable wear and tear and damages by the elements excepted.

*Baskin* and *Bartch, JJ.,* concur.