## Davis *versus* Moss.

*The Law of Fixtures, as between Landlord and Tenant.—Forfeiture for breach of condition.—Entry for condition broken, when necessary.*

1. A tenant may remove from demised premises, fixtures erected by him thereon for the benefit of his trade or business, if the removal be made during the term; after the term they become part of the realty, and are not severable.

2. Where by the terms of a lease it was provided, that if the lessee should cease mining operations for twelve consecutive months, it should become void, the entry of the lessees from time to time, to clean and grease an engine which had been erected on the premises and used in mining, after the suspension of operations for twelve months, was not a continuance of mining operations, within the terms of the lease, and would not prevent a forfeiture.

3. In Pennsylvania the right of the landlord to enter for condition broken, depends upon the terms of the lease, unless there be evidence to affect the landlord with a waiver of the breach, like the receipt of rent, or other equally unequivocal act.

ERROR to the Common Pleas of *Chester county.*

This was an amicable action between Joseph L. Moss as plaintiff and Thomas Davis as defendant, to determine the ownership of a stationary engine and the machinery used with it in working a lead and copper mine in Chester county.

The following are the material facts of the case as agreed on by the parties:—

On the 8th day of May, A. D. 1851, Thomas Davis, the defendant, being the owner of a certain tract of land in Schuylkill township, Chester county, joined with his wife in making a lease to Michael Ryan of Philadelphia, his heirs, executors, administrators, or assigns, of the entire mining right in and to a certain tract of land, situated in said township, for the term of ninety-nine years, with the right to erect all such workshops, steam-engines, pumps, and buildings, necessary for mining purposes, and to sink such shafts, and run such drifts, and do generally all such things as the said Michael, his heirs, executors, administrators, and assigns, may deem necessary for mining purposes. The said lessee covenanted for himself, his heirs, executors, administrators, and assigns, to pay, or to cause to be paid, to Davis and wife, or their legal representatives, the sum of $250 in advance every six months, the first payment to be made on the 8th day of May 1851, the second on the 8th day of November next following, and the said sum to be paid semi-annually thereafter until the ore-leave shall amount to $1000 per year, then the semi-annual payments to cease; but if at any time thereafter the amount of ore should fall short of the $1000 per year, the

[Davis *v.* Moss.]

semi-annual rent to be continued, and $3 per ton over the above-mentioned $1000 per year.

It was further agreed: That if the party of the second part should cease mining operations for twelve consecutive months, or should fail to make the stipulated payments ten days after the date of said indenture, it should be null and void and of none effect, and all rights and privileges thereby granted should revert to the said party of the first part, or to their legal representatives.

This lease was duly acknowledged, recorded, and subsequently assigned to the Montgomery Mining Company, who took possession of the demised premises, and continued to occupy the same until the 9th day of April 1854. The company opened a mine on the premises, sunk a shaft, and erected a steam-engine with the necessary gearing for the purpose of working the mine, and commenced the business of mining.

This business was continued until the 9th day of April, A. D. 1854, when the engine was stopped and the company ceased operations, paying no rent after that time, but leaving the engine with all its gearing, and a number of mining tools, on the demised premises. The work has not since been resumed. On the 10th day of November 1857, Dendy Sharwood obtained judgment, in the District Court of Philadelphia, for $1083.38 against the company, which, on the 7th day of December following, was marked to the use of Alfred A. Moss, a transcript of which, on the 13th day of January, A. D. 1858, was filed in the Common Pleas of Chester county. On the same day a *fieri facias* was issued, and all the property of the defendant on the demised premises, including the engine and gearing, was levied on, and under a *venditioni exponas* to the following term, sold by the sheriff on the 28th day of March 1858, to Joseph L. Moss, the plaintiff. The defendant gave notice at the sale that he claimed the engine and fixtures as a part of his real estate. The property levied on was one stationary steam-engine, three cylindrical boilers, twenty fathoms of cast-iron pumps, a lot of raising buckets, wheel-barrows, hand-barrows, timber shovels, a lot of zinc, oil-hoisting rope, and other implements of mining. April 30th 1858, the proceeds of sale, amounting to $523.01, were paid into court at the instance of the plaintiff, who moved for leave to take the same out of court, May 5th 1858. On motion of the counsel for Davis the landlord, a rule was granted to show cause why he should not take out of court $250 for six months' rent due him before the lease became void, provided there was that much arising from the sale of the property admitted to be personalty.

The court thereupon appointed an auditor to report a dis-

tribution of the money to and among the persons entitled thereto.

Before the auditor, the counsel for the landlord made no claim for rent upon the proceeds of sale arising from the sale of the engine and fixtures, but only on that part of the fund produced by the sale of the property which the landlord alleged was personal estate. The counsel for the execution-creditor claimed the whole proceeds, on the ground, that by the terms of the contract the lease should become void if the lessee ceased mining operations for twelve consecutive months before the execution issued, that the lease having been thus avoided the landlord had no right to distrain, and was therefore not entitled to claim any arrearages of rent out of the proceeds of sale. The auditor adopted that view, and reported against the claim of the landlord, who took exceptions to the report which remain undetermined. After the Montgomery Mining Company ceased operations on the demised premises, they, from time to time, entered and removed therefrom mining implements and tools of various kinds, greased the engine and kept it protected from injury, and after the sale by the sheriff, the purchaser, by his workmen, exercised the same kind of care over it to prevent corrosion by rust, and other injury resulting from exposure, by means of which it has been preserved in working order. This, however, was done without the observation, knowledge, or consent of the defendant. The engine, boilers, and fixtures belonging to it were sold at the sheriff's sale for $400, pile of cast-iron pipes used for pumps at $26, 25 fathoms of ten-inch pipes for pumps at $25.

In March 1859 the plaintiff sent agents to remove the engine and other property purchased by him at sheriff's sale. The defendant forbade the plaintiff's agents to remove the engine, boilers and fixtures belonging to it, and the pipes, claiming them as a part of the real estate. The plaintiff subsequently made demand of the property so purchased by him; but the defendant refused to give up the engine, boilers and fixtures, and pipes. The engine is a stationary steam-engine of eighty horse power, with three boilers about thirty feet in length, and thirty inches in diameter. There were twenty-five fathoms of cast-iron pumps, which were worked by one engine—a hoisting-machine and pumping gear suitable for the engine and pumps. A pit about twenty feet in length, nine feet in width, and ten feet in depth, was sunk in the ground. Another pit about four feet from the other, was sunk about the same depth, about thirty feet in length and five feet in width. These pits were filled with masonry, stone, and mortar, leaving places through which to pass a number of iron bolts, keyed at a point about eighteen inches from the foundation of the masonwork, passing through the iron plates forming part of the engine and secured at the top of said plates with nuts.

[Davis *v.* Moss.]

Passages were left to the keys in the bolts near the bottom of the masonwork, so that those keys could be taken out at any time, and the bolts thus removed by lifting them up. The engine was fastened to the masonwork by the bolts passing through the iron plates on the top of the masonwork. When the bolts are unkeyed and lifted out the engine is entirely loose, and may be removed from the foundation. A frame building of sufficient size to protect the engine from the weather, was built over it. The pumps were intended to rest upon the bottom of the shaft. The object of the engine and of the articles of the machinery connected with it, was to pump water out of the mines that have been opened and were worked by the company, and were used for that purpose, because the mining operations could not have been carried on below the water level without these articles or others of a similar character. They were fastened to the freehold in the ordinary and proper mode, the boilers were masoned in and covered with brickwork. The plaintiff claimed the property as belonging to him by virtue of the sheriff's sale, and also to recover damages for the refusal by the defendant to give up the same, and for the conversion thereof as aforesaid.

The defendant alleged that, the property not having been removed during the existence of said tenancy, or any right asserted to remove the same for the space of four years after the expiration of the lease, the engine, boilers and fixtures belonging to it remain inseparable, as a part of the freehold, and were not subject to levy and sale as personal property belonging to the Montgomery Mining Company. The question for the opinion of the court was, whether the plaintiff under these circumstances was entitled to recover. If so, judgment to be entered for the plaintiff for 6 cents damages and costs of suit; if not, then judgment to be rendered for the defendant for the sum of $1200 and costs.

The court below ordered judgment to be entered for plaintiff, without giving any written or verbal opinion. No argument of counsel was heard, the parties being desirous to have the opinion of this court in the case at the first term.

The defendant then sued out this writ, and assigned for error here the entry of judgment as above.

*Wm. Butler* and *U. V. Pennypacker*, for plaintiff in error, who was defendant below.—Everything annexed to realty, whether by permanent physical attachment or by adaptation of the article to the proper use of the property, becomes part of it, and cannot be severed without the owner's consent. This is the general rule, to which there is but one exception in favour of a tenant who has erected fixtures for the benefit of trade, and who

[Davis *v.* Moss.]

has permission to remove them during the term. During the term they are not legally fixtures, but if they remain after it expires, they are inseparable from the freehold: Elms *v.* Mews, 3 East 38; Van Ness *v.* Parker, 2 Peters 145; Taylor on Landlord and Tenant 90, 142; Smith on Landlord and Tenant 272, 349; White *v.* Arndt, 1 Wh. 94; Overton *v.* Williams, 7 Casey 155. If possession be retained after the expiration of the term, a tenant may remove such fixtures, but it must be done while he holds under a right to consider himself a tenant: Smith on Landlord and Tenant 263; McIntosh *v.* Potter, 3 M. & W. 184; Weston *v.* Woodcock, 7 Id. 14.

The engine in this case was a fixture: Elms *v.* Mews, 3 East 38; McCullough *v.* Irvine's Executors, 1 Harris 442; Gray *v.* Holdship, 17 S. & R. 415; Voorhis *v.* Freeman, 2 W. & S. 116; Pyle *v.* Pennock, 2 W. & S. 390; White's Appeal, 10 Barr 252; Harlan *v.* Harlan, 3 Harris 507, 303; Christian *v.* Dripps, 4 Casey 271; Morgan *v.* Arthurs, 3 Watts 140; Oves *v.* Ogelsby, 7 Watts 106; Roberts *v.* Bank, 7 Harris 71; Smith on Landlord and Tenant 339, 340, 341, 342, 343; Chitty on Contracts 362.

The tenant had a right to remove it during the term. By the sheriff's sale the plaintiff acquired all the tenant's rights. The lease was to be void if the tenant ceased mining operations for twelve consecutive months; they had ceased more than two years before the sale, so that the tenant's rights were forfeited long before the sale. The landlord waived none of his rights, but showed, before any effort was made to remove the engine, that he stood upon the forfeiture. He claimed the engine at the sale, and afterwards, on the ground that, the lease having expired, the engine had become part of the real estate; there was no effort to remove it until more than twelve consecutive months after the sale, during all which time, there was no mining done on the premises.

After forfeiture a lease is dead: Kenrick *v.* Smick, 7 W. & S. 41. Here the term was ended, and the premises deserted, long before an offer was made to remove the engine, &c.; consequently it became part of the freehold, and is the property of the defendant.

The provision in the lease authorizing the erection of the machinery, conferred no right or privilege on the tenant which he would not have had without it; and if not, all his rights were destroyed by his own act.

*Joseph J. Lewis* and *Wayne McVeagh,* for defendants in error.— This case is in no way analogous to an ordinary lease of farm land, and therefore the rule which compels the tenant to remove during the term, fixtures erected by him for his own convenience, is inapplicable.

[Davis v. Moss.]

This was a mining right, an agreement in which, by its terms, the surface was dissevered from the minerals, and the interest in each became a separate estate: Curtis v. Daniel, 10 East 273; Humphries v. Brogden, 64 E. C. L. Rep. 739; Keyser v. Parell, 2 Ellis & Blackburn 144; Caldwell v. Fulton, 7 Casey 475; Johnston Iron Co. v. Cambria Iron Co., 8 Casey 241; (see also Caldwell v. Copeland, 1 Wright 427). The grant held by the mining company was an incorporeal hereditament, the corporeal interest in the land and right of the surface remaining in Mr. Davis.

The engine and machinery therefore erected on the surface, was put there by the owner's permission, and was not forfeited by the expiration of the period named in the grant of the incorporeal hereditament: Fuller v. Taylor, 39 Maine Rep. 519; Dock v. Weswell, 38 Maine Rep. 569; Beasly v. Coxe, 4 Zab. 287; Ford v. Cobb, 6 Smith N. H. R. 344; Wells v. Bannister, 4 Mass. 515; Doty v. Gorham, 5 Pick. 487; Piper v. Martin, 8 Barr 211; Mitchell v. Freedly, 10 Barr 198; Shell v. Haywood, 4 Harris 530; White's Appeal, 10 Barr 252. Mr. Davis cannot now, by revoking his permission, become the owner of this property.

Again, the alleged necessity of removing these articles, rests on the presumption of an abandonment of everything annexed to the soil, which is left by the tenant. But neither party in this case dreams of abandonment. Before the levy and sale by Moss, Mr. Davis never thought that these articles were forfeited to him by the cessation of mining operations by the tenant. But after the levy and sale to Moss, he claims them, 1st, on the ground of forfeiture by breach of condition in the lease; 2dly, because they were not removed during the term. The first reason is one not to be encouraged: see Moyers v. Tiley, 8 Casey 267; the second has been already fully answered. The defendant in error rests his case on these four grounds:—

1st. That the lease being of an incorporeal hereditament, the subjacent mine, the property in dispute, was in no sense affixed to the subject of the grant, but was placed on the surface, to which the mining company had no claim. The law of fixtures, therefore, has no application. The only question is, to whom does personal property belong, placed by one man on the land of another with the latter's consent? 2d. That the consent of Mr. Davis impressed this property with the character of personalty, not of fixtures, but of *chattels absolutely*. 3d. That the continual claim to and care over the property by the mining company, rebuts any presumption of abandonment, and rendered it unnecessary for them to remove it while that claim and care continued. 4th. That the *laches* and acquiescence of Mr. Davis during three years as to this property, forbid him now to claim

the benefit of the forfeiture, and retain the property, which has been preserved by the care and at the expense of the mining company alone from injury.

The opinion of the court was delivered, March 11th 1861, by Woodward, J.—The question raised by the case stated is to be decided by the proper construction of the deed or lease of 8th May 1851, made by Davis and wife to Michael Ryan, and by him assigned to the Montgomery Mining Company. The engine, which is the immediate subject of the present dispute, was erected by the mining company under that lease, and if it be a mere personal chattel, the sheriff's sale conferred a good title upon Moss, and he must have the judgment; but if it became a part of the freehold, no title passed by the sheriff's sale, and the judgment must be entered for Davis. Whether the engine were personalty or realty, depends on the construction of the lease.

It was a lease to Ryan and his assigns for ninety-nine years, of "the entire mining right of and to a certain piece of land now owned and occupied by the said party of the first part, and bounded," &c. Such a grant would carry with it, as a necessary incident, the right to erect an engine with its fixtures, and all other appropriate machinery for working the mine; but the parties did not leave this right dependent on an implication; they defined it by express language. Full right, power, and privilege were given to the lessee and his assigns "to enter upon said premises, and to erect all workshops, steam-engines, pumps, and all buildings necessary for mining purposes except dwellings, and to sink such shafts, and to run such drifts, and do generally all such things as he or they may deem necessary for mining purposes." The rent is then provided for at $500 a year, until the ore-leave at $3 a ton for copper and lead ore shall amount to $1000 a year. Covenants for quiet enjoyment and for divers details are inserted, and then occurs the following provision: "*also that if the said party of the second part shall cease mining operations on the said tract for twelve consecutive months, then this indenture shall become void and of none effect.*"

It is a part of the case stated, that the mining company opened a mine on the demised premises, sank a shaft, erected a steam-engine with the necessary gearing, and commenced the business of mining; that they continued operations till the 9th day of April 1854, when the engine was stopped, the company ceased mining operations, and paid no rent after that time, leaving, however, the engine with all its gearing, and a number of mining tools, on the demised premises. The work has not since been resumed. On the 28th March 1858, nearly four

[Davis *v*. Moss.]

years after suspension of mining operations, the sheriff, by virtue of a writ of *vend. exp.* issued at the suit of a judgment-creditor against the mining company, sold the engine and its fixtures and the mining tools to the plaintiff Joseph L. Moss, after notice given by the defendant that he claimed the engine and fixtures as a part of his real estate.

These are the circumstances under which we are called on to decide whether the engine is severable from the realty. Moss succeeded to the rights of the tenants. What did he acquire?

That a tenant who erects fixtures for the benefit of his trade or business may remove them from the demised premises, is an established doctrine of the law, but with this qualification—that the removal be made *during the term*. After the term they become inseparable from the freehold, and can neither be removed by the tenant nor recovered by him as personal chattels, by an action of trover, or for goods sold and delivered: White. *v*. Arndt, 1 Wh. 94, and the cases cited in the argument. If a tenant remain in possession after the expiration of his term, and perform all the conditions of the lease, it amounts to a renewal of the lease from year to year, and I take it he would be entitled to remove fixtures during the year.

But here there was a forfeiture of estate by discontinuance of mining operations for twelve consecutive months and more. The entry of the company's agents to clean and grease the engine from time to time, was not a continuance of mining operations within the meaning of the lease. Nor was any entry by the landlord necessary to declare the forfeiture, for he was already in possession for all purposes except mining: Hamilton *v*. Elliot, 5 S. & R. 375. The law of entry for breach of condition in the tenure is somewhat different with us from what it is in England and in many of our surrounding states. We took occasion to point out the distinction in a recent case from the Western District, Shaeffer *v*. Shaeffer, 1 Wright 525. In England the forfeiture, however strongly the condition is expressed in the deed, is not complete until the landlord elects by some positive act to take advantage of it. With us it depends on the terms of the instrument, unless there be evidence to affect the landlord with a waiver of the breach, like the receipt of rent or other equally unequivocal act. When this lease was before us last year in Moss's Appeal, 11 Casey 164, on the distribution of the proceeds of what was admitted to be personal chattels of the mining company, we treated the term as surrendered to the landlord and merged in his reversionary estate. We can regard it in no other light now. A discontinuance of mining operations for nearly four years before the sheriff's sale, must be held to work a forfeiture of the lease, or we unmake the contract of the parties. There is nothing in the case from which we can imply the landlord's inten-

2 Wr.—23

[Davis *v.* Moss.]

tion to waive the palpable breach, and therefore he must have the benefit of it, and we must say that, the term being ended, the right of the tenant or of the sheriff's vendee to remove the engine, fell with the term. That the engine was so attached to the freehold as to be a part of the realty cannot be doubted under our decisions, and though the tenant might have secured it during his term, it is too late for the exercise of this right three years after his term was at an end.

The learned counsel attempted to avert the consequences of this view of their case, by arguing that the engine with its gearing was not attached to the subject of the grant, but was erected on the surface of the land by the express permission and license of Davis the lessor, outside of the demised estate.

It is not necessary for us to consider the argument erected on such a basis, for we cannot concede the fundamental postulate. We hold that the engine was attached to the subject of the grant. We have seen what the grant was—the entire mining right, with the privilege of erecting the necessary fixtures. So much of the surface as was necessary to the full enjoyment of this right, was expressly included in the lease. Whether the whole thing granted was of the nature of a corporeal or an incorporeal hereditament is not necessary to be decided, but that it included the ground on which the engine rested is past all reasonable doubt. We cannot so read the lease as to raise a doubt. The mining company held that ground on the same terms and conditions as the right of ways—the shaft, the copper, and the lead. They held them all under and according to the lease, and when they forfeited the lease, they lost them all.

The conclusion of the whole matter is that the plaintiff was not entitled to recover, and the judgment of the Common Pleas of Chester county is accordingly reversed, and judgment is now entered here for the defendant for $1200 and costs.

THOMPSON, J., dissented.