# Stopper *v.* Kantner, Appellant.

*Landlord and tenant—Trade fixtures—Intent—Removal.*

The want of intention to convert into realty chattels annexed to it, is imputed to the tenant who attaches to the demised premises fixtures for the use of his business, the law presuming in favor of trade that he means to remove them before the end of his term; and it is only on leaving without removing them that the intention to make a gift of them to the landlord is imputed to him.

Whatever may be the reason for the rule which requires the tenant to remove his trade fixtures during the term, there is no ground for its application where he attempts to remove in due time, but is forcibly prevented from so doing by the landlord who wrongfully takes possession of the demised premises.

Where a landlord gives to his tenant permission to remove fixtures during three days following the termination of the tenancy, and the tenant relying upon this permission delays removing the fixtures, the landlord cannot at midnight upon the last day of the tenancy, lock the building and forbid the tenant to remove the fixtures therein remaining.

Where a landlord gives a written permission to his tenant to remove fixtures on or before the third day after the termination of the tenancy provided that the removal should be made "without injury to the freehold, the fixtures, or other personal property" of the landlord, the landlord cannot revoke his permission at the end of the day terminating the tenancy merely because of very slight injuries, some of which were not shown to have been the acts of the tenant.

Where such a paper contains a description in detail of the different articles

which the landlord admitted belonged to the tenant, the tenant after the expiration of the tenancy, and within the three days of grace, is only entitled to remove such articles as were enumerated in the paper.  If he desired to remove articles as to which there was a dispute he should have done so before the tenancy expired.

In an action by a tenant against a landlord for the wrongful conversion of trade fixtures which the tenant was prevented from removing, the court admitted evidence that the tenant at the time of the conversion had an agreement with a third person to go into partnership and use the fixtures in the business, and that the plaintiff was to receive a certain price for a half interest in them, and that in consequence of the conversion the agreement fell through.  This evidence was admitted for the purpose of explaining the tenant's refusal of the landlord's offer to permit the former to remove the goods, made two weeks after the conversion.  The court did not permit the evidence to be used to show the value of the goods, and the amount of the verdict showed that the jury were not misled, and did not accept it as the basis upon which they computed the plaintiff's damages. *Held,* that the admission of the evidence was not reversible error.

Argued March 8, 1905.   Appeal, No. 6, March T., 1905, by defendant, from judgment of C. P. Lycoming Co., Sept. T., 1902, No. 423, on verdict for plaintiff in case of Lawrence D. Stopper v. Lewis Kantner.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and HENDERSON, JJ.   Affirmed.

Trespass for conversion of trade fixtures.   Before HART, P. J.

The facts are stated in the opinion of the Superior Court.

When the plaintiff was on the stand he was asked this question :

Mr. Metzger : Q. Now, Mr. Stopper, state whether or not you had any arrangement made for the use of this property prior to April 1, 1902 ?

Whereupon the counsel for the defendant objected to the witness answering said question, as follows :

Mr. Hicks : Objected to because it is not rebuttal of any evidence offered on behalf of the defendant, and second, because it would, in chief, appear irrelevant and immaterial.

The matter was then proceeded in as follows :

Mr. Metzger : Counsel for plaintiff proposes to prove by witness on the stand that prior to April 1, he had made arrangements with one William Hartman under which he proposed to continue the business in which he was then engaged ; that by reason of the refusal of defendant to deliver him the goods, he was unable to carry out the arrangement with Mr. Hartman,

and that on April 16, 1902, when he received notice from Mr. Kantner to remove his property by reason of the fact before mentioned, Mr. Stopper could not take possession of this property without great loss to him—as to him the property had largely decreased in value; further, that there is a very limited market for such articles in this vicinity. All for the purpose of rebuttal, there being evidence in the case offered by Mr. Kantner, that he had offered and was still ready to return these goods, that evidence being offered presumably in mitigation of damages.

Mr. Hicks: Counsel for defendant object to the offer, first: Because the evidence of the written notice of April 16, to Mr. Stopper from Mr. Kantner to come and take away his property was put in evidence in chief by the plaintiff himself and he cannot now rebut the effect of that evidence whatever it may be. Second, because the evidence is immaterial and irrelevant, the measure of damages being the market value of this property and not the special or peculiar value it may have had for a few days to Mr. Stopper.

The Court: We will overrule the objections and admit the evidence. To which ruling counsel for defendant excepts, and at his request bill of exceptions sealed. [1]

The court charged, inter alia, as follows:

[Of course, under the law, the relation of landlord and tenant, where the tenant is a manufacturer or is carrying on a trade which requires the use of machinery applicable to that trade, which is necessary to be placed in a building leased for the purpose of carrying on that trade, there is a rule which permits such person to attach that machinery to the freehold and to remove it any time during the term of his lease. If there was nothing else in this case which would extend the period of time beyond the expiration of this lease, there would be force in the contention of the defendant that the plaintiff would not have the right to claim this property after the expiration of the lease. But we say to you that this notice of March 28, 1902, extended to the plaintiff the privilege of removing whatever personal property upon the premises belonged to him up to and including April 3, 1902.

The question in this case therefore is: Was this plaintiff interfered with in the exercise of that right? Did this defend-

ant prevent this plaintiff from removing his goods from the premises at a time prior to April 3, 1902?] [3]

[Now it appears that on the morning of April 1, Mr. Stopper's brother, accompanied by some other person, I think a Mr. Lynch, went there for the purpose of taking away the rest of his goods, and that they found the door locked and a person inside who announced to them that they must not open the door, and after endeavoring to get in by persuasion (I don't know whether there was any evidence of force being used) this person said if they attempted to get in they might get a ball through them, or words to that effect. This was reported to Mr. Stopper and he then went to Mr. Kantner, the defendant, and related to him the circumstances in the presence of his brother. Mr. Kantner admitted that he had given instructions to keep people out of there and said to him in substance that he would not let him have these goods until he removed them himself and would then set them out and inform him of the situation. That is Mr. Kantner's own statement in reference to the matter as I recall it.

Now, if you believe that testimony, that on the morning of April 1, Mr. Stopper's employees went there for the purpose of removing these goods, that they were refused entrance to that building in the manner which has been described, and that such refusal on the part of Mr. Kantner's employee was acquiesced in by Mr. Kantner, the defendant, we say to you that this would be such a demand on the part of the plaintiff in this case and refusal on the part of the defendant as would entitle the plaintiff to maintain this action.] [4]

[If you believe Mr. Stopper was deprived of the privilege of taking those goods by this defendant at a time prior to April 3, he is entitled to recover whatever they were reasonably worth at that time; and it is your duty to take into consideration all the evidence bearing upon that question in determining the amount which you award to him if you find for the plaintiff.] [5]

Defendant presented these points:

Such of said trade fixtures as the plaintiff failed to remove from the demised premises within the term of his lease, became thereupon so affixed to the freehold that the plaintiff cannot maintain this action of trover and conversion for the same.

*Answer :* This would be the law had the defendant not extended the time for removal by his notice of March 28, 1902, wherein he gave to the plaintiff until April 3, 1902, to remove his property from the leased premises. For this reason this request is refused.] [6]

3. That such of said fixtures as the defendant in the written notice of March 28, 1902, notified the plaintiff not to remove from the demised premises, became, upon the expiration of the plaintiff's lease, which expired with March 31, 1902, so affixed to the freehold, that the plaintiff cannot maintain this action for the same. *Answer :* This point is refused. [7]

4. That such of said fixtures as by the written notice of March 28, 1902, the defendant gave to the plaintiff permission to remove from the demised premises on or before April 3, 1902, were by the terms of said permission to be so removed upon the express condition that such removal would be made without injury to the freehold. *Answer :* The notice is in these words : " You are further notified that any property or fixtures which you own or desire to remove from the premises must be removed from the premises on or before April 3, 1902, and that it must be removed without in any manner damaging the freehold or any other personal property or fixtures to which it might be attached." And to this is added, " All of the property that belongs to you you may remove on or before April 3, 1902 ; provided such removal may be made without injury to the freehold, the fixtures or other personal property belonging to me." We cannot say that this was such an express condition alleged in this request and we therefore cannot affirm the same. [8]

5. If the jury believe from the evidence that in attempting to remove the said fixtures or any of them the plaintiff, or anyone acting therein for him, was injuring the freehold, that is, doing injury to the building or other real estate of the defendant, then the defendant had the right, at the expiration of March 31, 1902, being then in possession of the freehold, to forbid and prevent the plaintiff from continuing such removal of said fixtures. *Answer :* This point is refused. [9]

6. If the jury believe from the evidence that by reason of injury being done to the real estate of the defendant, he rightfully forbade and prevented the plaintiff from removing any

of said fixtures from said demised premises after the expiration of March 31, 1902, then all of the said fixtures thereupon became so annexed to the freehold that the plaintiff cannot maintain this action, and the verdict of the jury should in that event be for the defendant. *Answer :* This point is refused. [10]

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions ; (3–10) above instructions, quoting them.

*Thomas M. B. Hicks,* with him *Max L. Mitchell,* for appellant.—Upon the expiration of the term, all fixtures, trade or otherwise, placed upon the premises by the tenant during the term and not removed before its expiration, became a part of the realty and the property of the landlord : White v. Arndt, 1 Whart. 91 ; Justice v. R. R. Co., 87 Pa. 28, 31 ; Overton v. Williston, 31 Pa. 155 ; Davis v. Moss, 38 Pa. 346 ; Darrah v. Baird, 101 Pa. 265 ; Watts v. Lehman, 107 Pa. 106.

A license, even if given for a consideration, when uncoupled with an interest in the land, is as a general rule revocable.   In the case at bar, however, the license was purely voluntary, and wholly without the passing of any consideration : Baldwin v. Taylor, 166 Pa. 507 ; Funk v. Haldeman, 53 Pa. 229 ; Dark v. Johnston, 55 Pa. 164.

Where trover has been brought for a specific chattel of ascertained quantity and quality, and unattended with any circumstances that can enhance the damages above the real value, the courts will make an order for staying the proceedings upon delivering it to the plaintiff, and payment of costs : Moon v. Raphael, 2 Bing. N. C. 310 ; Wintle v. Rudge, 5 Jurist, 274 ; Coombe v. Sansom, 1 Dow. & R. 202 ; Plevin v. Henshall, 10 Bing. 24 ; Kaley v. Shed, 51 Mass. 317 ; Rutland & Wash. R. R. Co. v. Bank of Middlebury, 32 Vt. 639 : Whitaker v. Houghton, 86 Pa. 48.

*G. B. M. Metzger,* for appellee.—Trespass is the proper remedy where an outgoing tenant is prevented from removing his personal property : McKay v. Pearson, 6 Pa. Superior Ct. 529 ; Rank v. Rank, 5 Pa. 211.

The permission of the landlord, without a formal renewal

or extension of the term is sufficient to preserve the character of trade fixtures as personal property: Donnelly v. Frick & Lindsay Co., 207 Pa. 597.

After the plaintiff has demanded his goods and the defendant has refused to deliver them, he is not bound to accept a tender of them where they have deteriorated in value since the conversion : Whitaker v. Houghton, 86 Pa. 48.

OPINION BY RICE, P. J., October 9, 1905:

The want of intention to convert into realty chattels annexed to it is imputed to the tenant who attaches to the demised premises fixtures for the use of his business, the law presuming in favor of trade that he means to remove them before the end of his term ; and it is only on leaving without removing them that the intention to make a gift of them to the landlord is imputed to him: Lemar v. Miles, 4 Watts, 330 ; Hill v. Sewald, 53 Pa. 271. Whatever may be the reason for the rule which requires the tenant to remove his trade fixtures during the term, there is no ground for its application where he attempts to remove in due time, but is forcibly prevented from so doing by the landlord who wrongfully takes possession of the demised premises : Ewell on Fixtures, 141. It was held in such a case, prior to the act abolishing the distinctions in the form of action, that the tenant could maintain trover for the chattels thus converted. " The instant the defendant took and appropriated the plaintiff's property they became entitled to redress by proper action at law. His wrongful possession is not a bar to the action of trover. If he entered in violation of his contract and unjustly converted the chattels, he is liable as a stranger would be for entering and taking the plaintiffs' goods :" Watts v. Lehman, 107 Pa. 106. In a very recent case it was held where a tenant having trade fixtures on the premises, secures a new lease in the nature of an extension of the old lease, and the new lease contains no reservation of the right to remove the fixtures, the tenant may keep the fixtures on the premises without giving the landlord the right to restrain their removal at or before the expiration of the second lease. In such a case the law will not require the tenant to do the vain thing of removing the fixtures one day and moving them back the next: Radey v. McCurdy, 209

Pa. 306. It is thus seen—and other illustrations might be given—that the general rule that the right to remove the fixtures must be exercised during the term, unless there is a specific agreement otherwise, is not without exceptions. But the case most closely analogous to the present is Donnelly v. Frick & Lindsay Co., 207 Pa. 597. In an action by the landlord against a former tenant for an alleged wrongful removal of trade fixtures after the expiration of the term, where there was evidence tending to show that the agent of the landlord prior to the expiration of the term gave the tenant permission to keep the property on the premises until he could obtain possession of another building which he expected to occupy, it was held to be error to charge that the tenant had no right to remove the fixtures during the period of holding over unless there was a definite and determinate agreement settled between the parties. After adverting to the general rule upon the subject, Justice BROWN said: "If, during the term, no intention can be imputed to the tenant to make a gift to his landlord of fixtures, which he has attached to the land for the use of his business, and he has a right to remove them during the tenancy, the same rule ought to, and does, apply when, by permission of the landlord, even without a formal renewal or extension of the lease, he continues to remain on the premises for a definite or indefinite term. During such period, in the absence of any agreement to the contrary, his intention as to his fixtures remains unchanged, and his right to remove them is unaffected by his holding over." It cannot be said that the decision was put upon the ground that there was an implied renewal of the lease, as in Davis v. Moss, 38 Pa. 346, for in the same connection the court said : "The tenant may have been mistaken as to its right to remain; but, if it was misled into doing so by the conduct or language of the agent of the appellee, the latter cannot now ask that the fixtures be forfeited to him." In the present case the term was for one year from April 1. On March 29, preceding the end of the term the landlord delivered to the tenant a paper dated March 28, giving him permission to remove certain fixtures and other articles, specifying them, on or before April 3, 1902. On Saturday, March 29, and Monday, March 31, the tenant was engaged in loosening the fixtures and preparing them for removal, but at midnight of the

latter day the landlord's watchman, who had been present over-looking the work for his employer, took possession and changed the locks, and when the tenant's employee appeared on the following morning to complete the work of removal he was unable to unlock the door, and was told by the person in charge that he could take nothing out of the premises. Thereupon the plaintiff went to the defendant and demanded his property, but was told, so he testifies, that he would not be permitted to take anything more out of the premises. The landlord could not in this manner acquire title to the tenant's trade fixtures which he had induced the latter to believe he would be permitted to remove on or before April 3. We do not say that the landlord had no right to revoke the permission and restore both parties to the legal position they would have occupied if it had never been granted; but he could not withhold the revocation until the stroke of midnight of March 31, and from that time forcibly exclude the tenant from the premises, and still hope to maintain the proposition that the tenant's omission to remove the specified fixtures before that hour as effectually barred his right to remove them at all, as well as his right of property in them, as if it had not been given. As has been said of the right to enforce forfeitures generally, so it may be said here, " there must be no cast of management or trickery to entrap " the tenant into what is equivalent to a forfeiture of trade fixtures which he never intended to dedicate as a permanent accession to the freehold. The fourth and sixth assignments are overruled.

But it is argued that the plaintiff had forfeited the privilege by his breach of what is claimed to be a condition upon which the permission was granted, namely, that the removal be made " without injury to the freehold, the fixtures or other personal property " belonging to the defendant. We are not prepared to concede that this was a condition subsequent and that for the slighest and most trivial injury to the freehold not negligently committed, as for example splintering a floor board in loosening the fixtures, a forfeiture could be declared. But we need not go into a discussion of that question. A careful reading of the testimony adduced by the defendant has failed to convince us that a verdict in his favor upon that ground could be sustained. When he was called upon to specify the

injuries of which he complained, he said: " Oh well, the amount that had been done just at that time didn't amount to such a very great deal. As I said here before, there was some stuff, lath, smashed up and broken up, and there was a little damage done to some steps that went upstairs—not a great deal. Some window lights broken—one sash was broken in couple of places." This testimony does not connect the defendant with the injuries complained of, and the other testimony fails to show that the windows were broken by the plaintiff, or with his knowledge or consent, or by his employee acting within the scope of his employment. The above quoted clause of the paper relates to unnecessary injuries done in the process of removing the fixtures, not to the willful or wanton acts, entirely disconnected therewith, committed by a third person without the knowledge or consent of the plaintiff. The evidence as to the damage to the steps leading to the second story is indefinite as to the time when or person by whom it was done, and at the worst the damage was insignificant. The witness being asked how many boards were broken answered : " Two—one partly and the other one just had a clip." How or when it was done does not appear. We will not go further into details. Eliminating from the case those injuries to the freehold which are not traced to the acts for which the plaintiff was responsible, and the injuries not shown to have been done in the process of removing the fixtures after the written permission was delivered to the plaintiff, and the injuries which upon cross-examination turned out to be to his own fixtures, there remains no sufficient basis in the evidence for a finding that the plaintiff forfeited his granted privilege to remove the fixtures on or before April 3. There was therefore no reversible error in the instructions complained of in the eighth, ninth and tenth assignments. These assignments are overruled.

The paper under which the plaintiff claimed the right to remove his fixtures after the expiration of the term enumerated certain fixtures which the defendant claimed belonged to him and which the plaintiff was notified must not be removed. It then proceeds : " You are further notified that any property or fixtures which you own and desire to remove from the premises, must be removed from the premises on or before April

3, 1903, and that it must be removed without in any manner damaging the freehold or other personal property or fixtures to which it may be attached. The property on said premises which belongs to you, is the following : " Here follows a specification in detail of the different articles which the defendant admitted belonged to the plaintiff. The paper concludes : " All of the property that belongs to you you may remove on or before April 3, 1902, provided such removal may be made without injury to the freehold, the fixtures or other personal property belonging to me." The construction of this paper when read as a whole is free from difficulty. It did not extend the term, nor did it extend the period within which the plaintiff could remove all the fixtures, nor did it debar the defendant from taking possession at the end of the term subject to the right of the plaintiff to re-enter for the single purpose of exercising the special privilege granted. It is a mistake to construe the last quoted clause as nullifying all that precedes. Of course the defendant's assertion that certain of the fixtures belonged to him amounted to nothing as evidence of the fact, but as the permission he was granting was purely voluntary he had a right to exclude from it, whether with reason or without reason, the fixtures he claimed as his property. This he did in express terms, specifying the articles. It was impossible for the plaintiff to be misled by this paper into the belief that his possession would be extended for three days for any purpose except for the single purpose of removing the fixtures not excluded from the written permission. He had unequivocal notice that as to these excepted articles he had no right of removal except such as law gave him. If he omitted to exercise it through mistake as to his right, it was his own mistake and the defendant was in no wise responsible for it. We are unable to find any stable ground, either legal or equitable, upon which to rest a decision that the general rule, that the tenant shall remove during his term the fixtures he proposes to claim the right to remove at all, does not apply to these excepted articles. We conclude, therefore, that the defendant's third point—seventh assignment—ought to have been affirmed, and the instructions complained of in the third and fifth assignments ought to have been qualified accordingly. The calculation presented by the appellant's coun-

sel in their paper-book shows quite satisfactorily that the verdict was $123.01 larger than it would have been if the defendant's third point had been affirmed and the recovery restricted as therein requested. Unless the plaintiff is willing to remit this amount from the judgment the case must go back for a retrial.

The remaining question to be considered is raised by the first and second assignments of error. Evidence that the plaintiff had an oral agreement with a third person to go into partnership and to use the fixtures in the business, that under the agreement this person was to pay the plaintiff a certain price for a half interest in them, and that in consequence of the conversion the agreement fell through, would not be competent for the purpose of making the price which this third person agreed to pay a basis for the computation of the plaintiff's damages. Nor was the evidence quoted in these assignments offered or admitted for that purpose. The only possible relevancy such evidence would have, under the pleadings, even though accompanied by evidence that there was a very limited market for such articles in that vicinity, would be to explain the plaintiff's refusal of the defendant's offer to permit him to remove the goods, made two weeks after the conversion. But as the case was presented, such explanatory evidence was not required to enable the plaintiff to recover damages equal to the market value of the chattels converted, until the defendant gave some evidence that they had not deteriorated in the meantime. No such evidence was introduced by the defendant, therefore the evidence offered by the plaintiff in rebuttal might well have been rejected as irrelevant. But as the evidence was offered and admitted for the single purpose above stated, and as the court did not permit it to be used for any other purpose, and as the amount of the verdict clearly shows that the jury were not misled and did not accept it as the basis upon which they computed the plaintiff's damages, we are of opinion that the admission of the evidence was not prejudicial error, and therefore is not cause for reversal.

And now October 9, 1905, it is ordered, that if within twenty days from this date the plaintiff shall file in the office of the prothonotary of this court a paper remitting from the amount of the judgment the sum of $123.01 the prothonotary

shall·mark the judgment affirmed for the reduced amount; otherwise, that he shall state of record that the judgment is reversed and a venire facias de novo awarded.