## MILLER v. JOHNSON, et al.

## SAME v. BUTLER, et al.

No. 2443-4.   Decided April 25, 1913.   On rehearing, September 12, 1913 (134 Pac. 1017).

1. FIXTURES—ACTIONS RELATING TO FIXTURES—ADMISSIBILITY OF EVIDENCE. In ejectment by a landlord against tenants, where the issue was whether a building located on a lot was a fixture, evidence of the character and value of the building, the payment of taxes by the tenants and admissions against interest of plaintiff's immediate grantor, while in possession of the lot during the time of his title, were admissible. (Page 473.)

2. FIXTURES—BETWEEN LANDLORD AND TENANT—TENANCY AT WILL. Where a lease for ten years of a lot expressly provided that a house erected on it should, at the expiration of the lease, belong to the tenants, a holding over by the tenants after the expiration of the lease under a tenancy at will did not constitute a surrender or abandonment of the building.[1] (Page 474.)

### ON REHEARING.

3. JUDGMENT—CONFORMITY TO PLEADINGS AND PROOF. Where a complaint only alleged that plaintiff was the owner of a building, and that defendants wrongfully withheld possession of same, and asked restitution and damages, the court could not, after adjudging plaintiff not to be the sole owner, but a joint owner with defendants, enter judgment for partition of the building, since such a judgment would be without the issue and not binding. (Page 477.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

---

[1] Young v. Con. Imp. Co., 23 Utah, 586, 65 Pac. 720.

Ejectment by R. E. Miller against C. E. Johnson and others, and Mary Ellen Slater Butler and others.

Judgments in favor of plaintiff. Defendants appeal.

AFFIRMED IN PART AND REVERSED IN PART. REHEARING DENIED.

*Johnson & Fowler* and *C. G. Gatrell* for appellants.

*Moyle & Van Cott* for respondent.

STRAUP, J.

These are two cases in ejectment, one against C. E. John- son and the Johnson Company, a corporation, and the other against Mrs. Butler. They are consolidated on this appeal. The facts in each case are the same. For convenience we refer more particularly to the Johnson Company Case.

On the 10th of August, 1888, William J. Lloyd, the then owner of the land described in the complaint, a lot in Salt Lake City 36 by 165 feet, made a ground lease to the de- fendants C. E. Johnson, Mrs. Butler, and one Oliver Hodg- son, for a term of ten years, or to and including the 10th of August, 1898, at a rental of forty-five dollars a month. In the lease it was stipulated: "And it is further agreed that the building erected upon the aforesaid lot shall, at the expira- tion of the time in this lease mentioned, be the property of the parties of the second part," the lessees. The lessees went into possession of the lot, and at their own expense erected thereon a two-story brick building, the walls of which rested upon a rock foundation embedded in the soil. The build- ing cannot be removed without tearing it down. The upper story was occupied by Johnson, and was used by him in carrying on a photograph business; the lower, consisting of two storerooms, was occupied by Butler and Hodgson, each occupying one room. In 1895 Johnson transferred his in- terest in and to the lease and to the building to the Johnson Company, a corporation of which he was the president and

general manager and principal stockholder, and which there-
after occupied and used the upper floor of the building in
carrying on a photograph business. Johnson and the John-
son Company paid to Lloyd one-third of the ground rent,
Butler one-third, and Hodgson one-third, each fifteen dollars
a month. In the summer of 1898, and before the lease ex-
pired, one B. F. Johnson, on behalf of the Johnson com-
pany, saw Lloyd and also his son John H. Lloyd, his agent,
"for the purpose of securing an extension of the lease." He
had prepared a draft of a new lease and read it to William
J. Lloyd. Lloyd told him the lease "was all right" except
the rent was too small, Johnson proposing that each pay but
five dollars a month instead of fifteen dollars, and Lloyd in-
sisting that each pay ten dollars a month, and requested
Johnson to see his son John about it, and said "that the
present lease—that is, the lease that was then in effect—
should be continued." Johnson saw John Lloyd with re-
spect to the amount of rent to be paid, but they then reached
no definite conclusion or understanding about it. The John-
son Company, however, paid and W. J. Lloyd accepted $7.50
a month for about six months after the written lease had
expired. No new lease having been entered into, B. F.
Johnson, in December, 1898, drew another proposed lease
and presented it to William J. Lloyd, and had a further
conversation with him about it. On this point Johnson tes-
tified:

"He (William J. Lloyd) at that time said he didn't care
to sign a written lease for any specified time; that the terms
of this proposed lease were all right, and he didn't care to
sign a written lease because he thought he probably would
sell the property. At all events he wanted to leave it so he
could sell it, and he referred me again to his son John Lloyd
for an arrangement as to the amount of rent, because we were
still disputing about what rent we would pay. . . .
When we first got into controversy about the rent I called
attention to the fact that we desired the matter settled one
way or the other, as we would be obliged to seek a new loca-
tion for the photograph gallery unless we could get an exten-

sion of this lease, and he said that, until we came to some definite conclusion about a new written lease, we could continue to occupy the premises on the same terms and conditions of the old lease, except we were to arrange with his son about the rent, the amount of rent to be paid."

He further testified that he thereafter saw John H. Lloyd, and that it was finally agreed between them that the rental to be paid by each tenant was eight dollars a month. The Johnson Company continued in possession and paid that amount of rent each month until the commencement of this action, as also did Mrs. Butler. In November, 1898, about three months after the expiration of the original lease, W. J. Lloyd purchased Hodgson's interest in the the building, and from thence by tenants occupied the same room which theretofore had been occupied by Hodgson.

J. H. Lloyd testified that his father had consulted with him in relation to the proposed extension of the tenancy of Johnson and Butler, and stated that their tenancy might be continued from month to month, but that he did not desire to tie up his property by any long lease. The Johnson Company and Mrs. Butler paid the rent to W. J. Lloyd until his death in June, 1903, and thereafter to John H. Lloyd, the executor of his estate. On the 18th of August, 1910, the executor by deed sold and conveyed the real estate to the plaintiff. The deed described the real estate without reference to any improvements thereon. The executor, thereupon notified the Johnson Company and Mrs. Butler that the plaintiff "since the 18th of August, 1910, has been the owner of the land and premises above described, together with all our improvements thereon." The plaintiff, four days after the purchase, and on the 22d day of August, 1910, served a written notice and demand on the Johnson Company and Butler to vacate and surrender to him the land, and all the improvements thereon, not later than the 8th of September, 1910. They refused to surrender the building, hence these lawsuits.

The plaintiff does not claim to be an innocent purchaser. It is shown, and not denied, that he purchased with full knowledge and notice of all the rights and claims, whatever

they may be, of the Johnson Company and Mrs. Butler in and to the improvements. Before the plaintiff purchased he inquired about them, and was told that the Johnson Company and Mrs. Butler each claimed an undivided one-third interest in and to the building, and that the Lloyd estate owned the other one-third. Both the Johnson Company and Mrs. Butler at the time of plaintiff's purchase were, and for a long time prior thereto had been, in possession of the property, the Johnson Company of the first floor, and Mrs. Butler one of the storerooms.

While the court found that no agreement was made between William J. Lloyd and C. E. Johnson, except the ten-year written lease, or that "he should continue to own and occupy said building," it nevertheless found that "shortly prior to the expiration of the term of the said written lease, B. F. Johnson, on behalf of the Johnson Company, verbally agreed with William J. Lloyd that said Johnson Company could occupy the said premises until further arrangements could be made," and that "John H. Lloyd in behalf of said William J. Lloyd and B. F. Johnson in behalf of the Johnson Company agreed upon a rental of eight dollars per month."

The defendants offered to show that the building placed on the lot was of the value of $7000. They also offered to show that the building was assessed each year, first to C. E. Johnson, Mrs. Butler, and Hodgson, then to the Johnson Company and Butler, and that the Johnson Company and Mrs. Butler each paid one-third of such taxes until the commencement of the suit; that after Hodgson sold his interest to William J. Lloyd the building was assessed to the Johnson Company, Butler and William J. Lloyd, and that each paid one-third of the taxes. They further offered to show that William J. Lloyd, neither before nor after the expiration of the ten-year lease, claimed or asserted any interest in and to the building, except the portion thereof and the interest purchased by him from Hodgson. All this the court, on plaintiff's objections, refused.

The court entered judgment decreeing plaintiff to be the owner and entitled to the immediate possession of the real es-

tate, "together with all the improvements and buildings there-
on"; that the defendants had no right, title, or interest in or
to the building, or any part thereof, and that they, on and
after September 8, 1910, wrongfully and unlawfully with-
held possession thereof from the plaintiff, and ordered a writ
of restitution. The defendants appeal.

Complaint is made of the rulings refusing the defendants'
proffered evidence. We think the court erred in such respect.
The objections were made and the rulings are defend-
ed on the ground that the defendants had neither
pleaded nor claimed title by adverse possession.
Of course no such issue was tendered, nor was there any such
claim made. But it is manifest that the character and value
of the building, the payment of the taxes, and the admissions
against interest of plaintiff's immediate grantor while in pos-
session of the land and during the time of his title, were
material and relevant for purposes other than to support a
claim for adverse possession. In determining whether a thing
is or is not a fixture it is proper to inquire into its character
and value. Here confessedly the plaintiff purchased subject
to whatever rights the defendants had in and to the building,
and got no more, as against the defendants, than what his
grantor in fact had. The payment of taxes by the defendants
on the building had some bearing on the question of owner-
ship and the manner in which the parties themselves regard-
ed it, both before and after the expiration of the ten-year
lease. The evidence was especially pertinent on the question
of abandonment and surrender. The rule is familiar that
declarations or admissions against interest of a grantor con-
cerning his title while in possession and during the time of
his title are admissible in evidence against his grantee who
claims or holds title through or under him. Since the plain-
tiff purchased with actual notice of the defendants' claims
we need not decide whether the particular declarations and
admissions of plaintiff's grantor would be receivable had the
plaintiff purchased without knowledge or notice of the claims.

The appellants, however, have another complaint more ser-
ious. The court ruled the case, and the judgment is defended,

on the theory that the building placed on the lot by the lessees was a fixture, and while they, by the express terms of their lease—the ten-year lease—had the right to remove it, they nevertheless were required to do so at or before the expiration of the lease; and, not having done so, as the plaintiff asserts, and having entered into a new lease with the lessor, after the expiration of the written lease, with no reservation of a right to a removal of the building, or of any fixtures, the building was surrendered to the lessor and became a part of the realty, and therefore the right of the lessees to remove it was lost. The plaintiff thus invokes the rule, frequently applied by courts in many jurisdictions, that if a tenant having the right to remove fixtures erected by him on demised premises accepts a new lease of such premises without reservation or mention of any claim to such fixtures, and enters upon a new term thereunder, the right of removal is lost, notwithstanding his actual possession was continuous. In support of this he cites: *Carlin v. Ritter,* 68 Md. 478, 13 Atl. 370, 16 Atl. 301, 6 Am. St. Rep. 467; *Loughran v. Ross,* 45 N. Y. 792, 6 Am. Rep. 173; *Merritt v. Judd,* 14 Cal. 60; *Wadman v. Burke,* 147 Cal. 351, 81 Pac. 1012, 1 L. R. A. (N. S.) 1192, and notes, 3 Ann. Cas. 330; *Watriss v. Nat'l Bank of Cambridge,* 124 Mass. 571, 26 Am. Rep. 694; *Unz v. Price's Devisees* (Ky.) 58 S. W. 705; *Hedderich v. Smith,* 103 Ind. 203, 2 N. E. 315, 53 Am. Rep. 509; *Davis v. Buffum,* 51 Me. 160.

The defendants contend:

(1) The facts here do not bring the case within that rule; and (2) the right of removal of fixtures placed on demised premises by a tenant continues so long as he remains in possession of the premises with the landlord's consent, even after the lease expires, and that even the making of a new lease and continuous possession thereunder does not itself forfeit the tenant's right to the removal of fixtures placed on the premises under the first lease, unless the new lease contains stipulations or covenants showing, or which are equivalent to, an abandonment or surrender of such fixtures. In support of such second contention is cited: *Kerr v. Kingsbury,* 39 Mich.

154, 33 Am. Rep, 362; *McCarthy v. Trumacher,* 108 Iowa, 284, 78 N. W. 1104; *Union Terminal Co. v. Wilmar Co.,* 116 Iowa, 392, 90 N. W. 92; *Daly v. Simonson,* 126 Iowa, 716, 102 N. W. 780, *Ogden v. Garrison,* 82 Neb. 302, 117 N. W. 714, 17 L. R. A. (N. S.) 1135; *Radey v. McCurdy,* 209 Pa. 306, 58 Atl. 558, 67 L. R. A. 359, 103 Am. St. Rep. 1009; *Donnelly v. Frick & Lindsay Co.,* 207 Pa. 597, 57 Atl 60; *Second Nat'l Bank of Beloit v. O. E. Merrill Co.,* 69 Wis. 501, 34 N. W. 514; *Fitzgerald v. Anderson,* 81 Wis. 341, 51 N. W. 554; *Wright v. Macdonnell,* 88 Tex. 140, 30 S. W. 907; *O'Brien v. Mueller,* 96 Md. 134, 53 Atl. 663; *Bergh v. Herring-Hall-Marvin Safe Co.,* 136 Fed. 368, 69 C. C. A. 212, 70 L. R. A. 756; *Searle v. Rom. Cath. Bishop of Springfield,* 203 Mass. 493, 89 N. E. 809, 25 L. R. A. (N. S.) 992, 17 Ann. Cas. 340.

If we hold with the defendants on the first, we need not determine whether the rule is as contended by the plaintiff, or the defendants in their second contention.

The court found, and the evidence shows, no new lease was made. But the court found that it was verbally agreed that the defendants "could occupy the premises until other arrangements could be made." And the evidence, without dispute, shows that until some definite conclusion was reached as to a new written lease, the defendants "could continue to occupy the premises on the same conditions and terms of the old lease," except as to the amount of rent to be paid which was agreed to be eight dollars per month for each tenant; that the lessor finally did not desire to enter into a new written lease for a long definite time, but was willing that the "tenancy might be continued from month to month, and under such an understanding and arrangement, the defendants remained in possession and paid the rent to W. J. Lloyd and to the executor of his estate, until notice from the plaintiff in August, 1910, terminating the tenancy on September 8th of that year. This but shows an excresence on the term, or a holding over with the consent of the landlord, or a tenancy at will, under the terms and conditions of the written lease, except as to the amount of rent to be paid, and hence is not

within the rule contended for by the plaintiff, but is more nearly within that announced in *Young v. Con. Imp. Co.,* 23 Utah, 586, 65 Pac. 720. There it was held that an extension of the terms and conditions of a lease, giving the tenant the right to remove fixtures, included the right to remove fixtures placed in the demised premises by him under the terms of the original lease. Upon the facts here no presumption, either of law or fact, can be indulged that the building, which under the express terms of the written lease was to be "the property" of the lessees, was abandoned or surrendered to the lessor.

The evidence shows the plaintiff to be the owner of the land, and that he and the Johnson Company and Butler are the joint owners of the building, each owning an undivided one-third interest therein. He had the right to terminate the tenancy, which he did, and to have the possession of the land restored to him, which was not controverted; but he had no right to the exclusive possession of the building, nor to have the title of it awarded solely to him. Each is obliged to respect the rights of the other.

The facts referred to were pleaded by the defendants in defense only. Nothing is pleaded by them by way of affirmative relief, nor is there any such relief prayed. They did aver "that when plaintiff demanded of this defendant the possession of said premises and the improvements thereon he offered to vacate the premises and to tear down and remove the building, or to join with plaintiff in so doing, and plaintiff refused to join with this defendant in so tearing down and removing said building, and forbade defendant doing so." But no evidence was given of that, except the plaintiff, in response to questions asked him on cross-examination, answered that defendant "never made a proposition to do so, but I don't think I would give consent to it," because he claimed to be the sole owner of the building. And when the matter was further attempted to be gone into, the court, on plaintiff's objection, stopped it. No findings were made with respect to it, and no complaint is made in such particular.

The judgment, therefore, awarding title and possession of the land to plaintiff and terminating the tenancy, is to that extent affirmed; otherwise it is reversed, and the case remanded, with directions to make findings and to enter a judgment awarding the title and ownership of the building jointly in the plaintiff, the Johnson Company, and Butler, each an undivided one-third interest. Neither the pleadings nor the assignments justify or authorize us to do more. Costs to appellants.

McCARTY, C. J., and FRICK, J., concur.

ON REHEARING.

STRAUP, J.

The respondent asks a rehearing on allegations of uncertainty of the judgment and a denial of ground rent. The first is put on the ground that we did not indicate in what manner or by what procedure the interests of each litigant in and to the building—an undivided one-third interest—could be preserved, or what each could lawfully do, on a severance of the joint interest and apportionment of the joint property. He urges he is the owner of the land on which stands the building; the building cannot be removed without tearing it down; to tear it down is to render it valueless, the material thereafter being, as he asserts, of no greater value than the cost of tearing down the building and removing the material; and since he is the owner of the land, and entitled to have his interest in the building maintained thereon and the appellants not theirs, therefore should it now be adjudged that the building be not removed, the respondent awarded the title to the whole thereof upon paying the appellants the value of two-thirds of the material, less the cost of tearing down the building and removing the material, which he asserts is nothing, or but nominal. In that way, is it claimed, the appellants will be awarded everything that could be obtained by them by a removal of the

building, and the interest of the respondent saved from needless destruction.

Of course we must stay within the issues. An adjudication beyond them is of no binding effect. As indicated in our opinion, we adjudicated all we thought we were justified or authorized to adjudicate. The complaint is brief. The only delict charged is that Johnson and the Johnson Company wrongfully withheld possession of the second floor of the building, and Butler, a storeroom on the first floor. For that restitution and damages were demanded and awarded. This on the theory that the respondent was the sole owner and entitled to the exclusive possession of the entire building. We held he was not the sole owner, and not entitled to the exclusive possession, but that he, the Johnson Company, and Butler were joint owners, each owning an undivided one-third. Hence does it follow that he is not entitled to the demanded restitution, and neither appellant is liable in damages for withholding the alleged portion of the building, the charged delict. We thus disposed of the whole controversy as presented by the pleadings. But, says the respondent, he is entitled to ground rent. He complained of no such delict or breach. Such matter was not presented or litigated. True, he alleged, and the appellants admitted, that he was the owner of the land on which is the building. But no complaint was made that they wrongfully withheld possession of the land, or had failed to pay ground rent, or that any was due or owing. Defeated as he is, on the case presented, the respondent now by petition presents another, and asks an adjudication of that, without issues, evidence, or trial. That is, since we held that he is not the sole owner of the building, and not entitled to the exclusive possession, but that he and the appellants are joint owners of it, the respondent, unwilling to longer continue such joint ownership, now seeks a severance of it and a division or apportionment of the joint property and a judgment for ground rent. That, on this record, we are not authorized to give him. He on a final severance is in the situation of any other co-owner of an indivisible

thing. If the co-owners are themselves unable to adjust their differences, equity, when invoked on proper issues, no doubt will afford appropriate relief.

The rehearing is denied, and the remittitur ordered.

McCARTY, C. J., and FRICK, J., concur.