# BINGHAM & G. RY. CO. v. NORTH UTAH MINING CO. OF BINGHAM et al.

### No. 2877.   Decided Dec. 22, 1916 (162 Pac. 65).

1. EMINENT DOMAIN—RAILROAD RIGHT OF WAY—POSSESSION AND OCCUPANCY.  The use of land condemned for a railroad right of way for an exclusive use permanent in its nature precludes the owner from entering on or using any part of it, except by the condemnor's consent, or where the statute or the court limits the easement by reserving certain rights to the owner. (Page 131.)

2. EMINENT DOMAIN—EXTENT OF RIGHT—RAILROAD RIGHT OF WAY—USE BY OWNER.  The owner of land condemned for a permanent right of way may not place any permanent structures or obstacles upon the condemned premises, but where the owner's land is divided by the construction of a railroad through it he usually has the right to construct a passageway over or under the road for his convenience in passing from one part of his land to another, which right is usually reserved or given by the statute. (Page 132.)

3. EMINENT DOMAIN—RAILROAD RIGHT OF WAY—COMPENSATION—LITIGATION.  The owner of land condemned for a permanent railroad right of way is entitled to compensation in money, and may not be required to accept, in mitigation of damages, the condemnor's offer of a conjoint possession or occupancy, subordinate to the condemnor's use.   (Page 133.)

4. EMINENT DOMAIN—PROCEEDINGS—PLEADING—AMENDMENT AS OF COURSE.  In an eminent domain proceeding after an order giving full and exclusive possession, pending the action, of certain defined tracts, parts of the strip sought to be condemned for a permanent railroad right of way, and entry upon and improvement of such tracts, and after defendant in a former and in the present trial had submitted all its evidence on the theory that the condemnor would exclude it from the tracts, the condemnor had no right to amend as a matter of course, so as to permit defendant to have joint possession of the part of the tract.   (Page 135.)

5. PLEADING—AMENDMENT—TERMS.  In view of the fact that if the amendment would compel defendant to expend large additional sums of money to defend the action, the court properly exercised its discretionary power by imposing as a condition of the

amendment that the condemnor should pay to defendant the sum of $1,750 as and for the increased costs claimed by them. (Page 135.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Condemnation proceedings by the Bingham & Garfield Railway Company against the North Utah Mining Company of Bingham, William Robbins, and others.

From separate judgments for damages in favor of the Mining Company and Robbins, plaintiff appeals.

AFFIRMED.

*Dickson, Ellis, Ellis & Schulder* for appellant.

*E. O. Leatherwood, P. T. Farnsworth, Jr.,* and *Willard Hanson* for respondents.

FRICK, J.

The plaintiff, a corporation, in August, 1910, commenced this proceeding under our statute to condemn a certain strip of ground, a portion of which is indicated by what are designated as tracts A and B, for railroad purposes. Tracts A and B, which are more particularly in question here, extend over certain mining claims which are owned by the defendant North Utah Mining Company of Bingham, a mining corporation, and in which claims or tracts aforesaid the defendant William Robbins claimed some interest as lessee. The claims of the other two defendants are not material now.

In plaintiff's amended complaint the strip of ground that is sought to be condemned is fully described by metes and bounds, and the purposes for which the same is to be used, and the nature or extent of the interest sought to be acquired by the proceedings, are stated thus:

"That for the purpose of operating said railway and carrying on the business of the plaintiff as such railway company, it has become and is necessary for the plaintiff to use and occupy the ground owned by the defendants hereinbefore

described, and the whole thereof for an easement for the erection of structures necessarily incident to the operation of said railroad, and for a right of way for the construction, maintenance and operation of said railway in the carrying or transportation of mineral bearing ores and other property from the mines in the vicinity of the said town of Bingham to the reduction works, mills and smelters at and near the town of Garfield, and the transportation of supplies and other property and persons to and from the mines and mills in the vicinity of said town of Bingham; that the title desired and required by the plaintiff in said premises sought to be obtained is a permanent right of way and easement for the purposes aforesaid.''

In an amendment to the amended complaint the extent of tract A is reduced from 1.40 acres to .74 acres, and tract B is reduced from 1.87 acres to 1.22 acres, and the interest sought to be acquired by the plaintiff in said two tracts is stated thus:

''That the title desired and required by the plaintiff in said premises sought to be condemned is a permanent right of way and easement for the purposes aforesaid.''

The plaintiff prays judgment as follows:

''Wherefore the plaintiff prays that an order may be made by this court permitting the plaintiff to occupy the premises sought to be condemned and hereinbefore described, pending the action, and to do such work thereon as may be required for the construction, maintenance, and operation of said proposed railway upon such terms and conditions as are required by the statute in such case made and provided, also that said defendants and each thereof be adjudged to produce and bring forward any and all claims that they or any of them have or make upon the above-described tracts of land, or any part thereof, that the respective interests of said defendants in and to said premises be adjudged and that said land herein particularly described and sought to be condemned be condemned for the use of said plaintiff for the purpose and to the extent herein set forth, and that the value of said land to the extent of the defendants' interest therein be ascertained in the manner provided by law, and when so assessed and ascertained, the plaintiff hereby offers and agrees to pay the same

128            SUPREME COURT OF UTAH.            [Dec.

Bingham & G. R. Co. v. N. Utah M. Co. of Bingham et al., 49 Utah 125.

to the party who may be entitled to such damages, and that the plaintiff may have such other and further relief in the premises as it is by law entitled to.''

In accordance with the prayer of the complaint, and in pursuance of our statute, the district court, on the 28th day of August, 1910, made and entered the following order:

''It is, therefore, hereby ordered and adjudged that the plaintiff be and it is hereby permitted and authorized to occupy the premises sought to be condemned in this action, pending the action, and to do such work thereon as may be required for the purposes for which said premises are sought to be condemned, according to the nature thereof.

''It is further ordered, adjudged and decreed that before entering upon or occupying said premises, the plaintiff shall file herein a bond to the defendants in the penal sum of twenty-five thousand ($25,000) dollars, conditioned to pay the adjudged value of the premises, and all damage in case the property be condemned, and to pay all damages arising from the occupation before judgment in case the premises be not condemned, and all costs adjudged to the defendants in the action.

''It is further ordered and adjudged that, pending the action, the defendants, their respective agents, servants and employees be, and they are, hereby restrained from hindering or interfering with the occupation of the said premises by the plaintiff, and the doing thereon of the work required for the purposes for which it is sought to condemn the said land.

''Done in open court this 28th day of October, A. D. 1910.''

After this the defendant mining company filed its answer to the complaint in which it set forth its interest in the whole of the mining claims affected by the taking of tracts A and B aforesaid. It also specifically set forth in its answer that the ground sought to be condemned contained valuable minerals, and was, and for a long time had been, worked as a metal mine, and with much particularity also set forth the nature and extent of the developments of the mining claims and in what way and to what extent the construction and operation of the proposed railroad would damage the whole of the mining

claims, and also set forth the value of the particular parts sought to be condemned.

The defendant Robbins set forth that he was a lessee of certain parts of the underground workings of the mining claims sought to be condemned, and how and to what extent he was damaged by the proposed construction. The interests of the other two defendants are not material here.

Upon the issues the question of damages was submitted to a jury which returned two verdicts, one in favor of the defendant Robbins, hereinafter called lessee, for $4,000, and the other in favor of the other defendants for $11,650. The court entered separate judgments upon the verdicts, and the plaintiff appeals from both judgments.

A number of errors are assigned, and we shall, as briefly as possible, consider such as are deemed material:

The principal assignment relates to the refusal of the district court to permit the plaintiff to amend its complaint during the trial except upon the terms imposed by the court, and that the court erred in not permitting certain offers of proof in that regard without the proposed amendment to the complaint. Briefly stated, the questions presented by the foregoing assignment arose as follows: When the plaintiff commenced this proceeding in August, 1910, it asked and obtained an order, under our statute, giving it full and exclusive possession of tracts A and B, which are parts of the strip sought to be condemned, for the purpose of constructing its railroad and improvements thereon, which order we have hereinbefore set forth. In November following the plaintiff amended its complaint by reducing the area of the two tracts, as before stated. Plaintiff, in pursuance of the court's order, took immediate possession of the strip of ground and constructed a tunnel through the mountain in tract B and constructed a steel bridge or trestle upon concrete abutments upon tract A. The steel structure or bridge ends at or near the point where the tunnel enters the mountain side and continues over tract A at the height of from a few to more than eighty feet. In April or May, 1911, the tunnel, steel bridge, and railroad were completed and plaintiff has operated and used the same ever since for the purposes for which they were

constructed, namely, to transport ores, freight, and passengers over the railroad. A trial to a jury was had in 1913, in which verdicts were returned for all of the defendants, which, for some reason, were set aside by the district court and a new trial granted. The case was again tried and submitted in February, 1915, with the result before stated. Both trials of the case were somewhat protracted, and, from the showing made by the defendants were quite expensive.

After all of the defendants had submitted all of their evidence on the second trial, all of which was presented upon the theory that the plaintiff had excluded and would continue to exclude all of the defendants from tracts A and B, the plaintiff asked leave to amend its complaint so as to permit the defendants other than the lessee to have joint possession with the plaintiff of all that portion of tract A over which the steel structure aforesaid was constructed. This offer was made for the purpose of mitigating the damages that were claimed by the defendant mining company upon the ground that in being excluded from tract A it would be deprived of valuable dumping ground upon which it might dump the waste material which would be developed in the underground workings of the mine. The defendant mining company resisted the amendment for the reason, among others, that it had already presented all of its evidence, and for the further reason that the case had already been twice tried, so far as it was concerned, and had been tried upon the theory that plaintiff claimed possession of both tracts A and B aforesaid. It was conceded, when the amendment was offered, that it would not affect the rights of the lessee.

The defendants, in support of their objections to the amendment, made a strong showing to the court in which it was made to appear that if the issues were to be changed as contemplated by the proposed amendment, then defendants could not then proceed with the trial, and that much of their evidence upon the question of damages would be useless, and that it would further entail great additional expense on them if the case had to be retried upon the theory of the proposed amendment. The amount claimed in that regard was variously stated from $3,000 to over $5,000. The district court

segregated the several items of expense as stated by the defendant mining company, and ruled that the amendment should be allowed upon the condition that the plaintiff should pay to the defendants the sum of $1,750 as and for the increased costs claimed by them. The plaintiff refused to comply with the conditions imposed by the court, and elected to proceed with the trial without the amendment. Notwithstanding the refusal of the court to permit the complaint to be amended as before stated, the plaintiff nevertheless, offered to prove in mitigation of damages that it was willing to permit the defendant mining company henceforth to have conjoint possession with the plaintiff of tract A for dumping purposes; such right to be exercised, however, subject to the rights of the plaintiff. The court refused to admit the proffered evidence and proceeded to try the question of damages upon the theory that the plaintiff had taken and would continue to exercise exclusive possession of tract A, and that the mining company would thus be deprived of the right to dump its waste material upon said tract.

Plaintiff's counsel strenuously insist that the rulings of the district court constituted prejudicial error for the reasons: (1) That the plaintiff had the right at any time to permit the mining company to use tract A for dumping purposes, and in so doing might mitigate the damages claimed by said company; (2) that the plaintiff had a right to make the amendment without the imposition of terms; and (3) that if the court could impose terms, as it did, yet those imposed were excessive and unreasonable and for that reason the court had abused its discretion in that regard.

In connection with the first proposition stated above, counsel also contend that all the plaintiff acquired by the condemnation was an easement over tract A for railroad purposes, and that for that reason the defendant mining company at all events, had the right to make any use of said tract A that would not be incompatible with the rights of the plaintiff, and for that reason the court should have received the proffered evidence. In support of their contention counsel, among other cases, cite and rely upon the following: *Kansas C. Ry. Co.* v. *Allen,* 22 Kan. 285, 31 Am. Rep. 190; *Manitowoc*

*C. P. Co.* v. *Manitowoc G. R. & N. W. R. Co.*, 135 Wis. 94, 115 N. W. 390; *East Tennessee, V. & G. Ry. Co.* v. *Telford's Ex'rs,* 89 Tenn. 293, 14 S. W. 776, 10 L. R. A. 855; *Platt* v. *Pennsylvania Co.,* 43 Ohio St. 228, 1 N. E. 420; *Southern Ry.* v. *Beaudrot,* 63 S. C. 266, 41 S. E. 299; *St. L. K. & N. W. R. Co.* v. *Clark,* 121 Mo. 169, 25 S. W. 192, 906, 26 L. R. A. 751; *Oregon R. & Nav. Co.* v. *Owsley,* 3 Wash. T. 38, 13 Pac. 186; *Spokane Valley, etc., Co.* v. *Jones & Co.,* 53 Wash. 37, 101 Pac. 515; *Olympia, etc., Co.* v. *Harris,* 58 Wash. 410, 108 Pac. 940.

The doctrine announced in the foregoing cases, and which we think is supported by the great weight of authority, is so well and so clearly stated in 15 Cyc. 1023, that we shall do no more than to quote from that volume:

"Condemnation of land usually precludes the owner from entering on or using any portion thereof without the consent of the party condemning the land, except in case of an easement in so far as his use is not inconsistent with the use for which the land was appropriated. * * * The use by a railway company of land condemned for its road is practically an exclusive one, and permanent in its nature, unless the statute, or the court in its order, limits the easement to be acquired by reserving certain rights and privileges to the landowner, or unless such limitation is conceded by the company. This rule has in some jurisdictions been so far modified as to allow the landowner to enter upon and use the land for any purpose not inconsistent with its use by the company for any of the objects which the railroad is intended to accomplish. The owner has not the right to cross and recross the road except at places open to the public for such purposes, unless the statute provides for such crossings."

There is, however, nothing in the foregoing cases, nor in any other cited by counsel, nor in any one we could find, which authorizes the owner of the condemned property to place any permanent structures or obstacles upon the condemned premises or right of way. True it is, that, in case the owner's land is divided by the construction of the railroad through it, the owner usually has the right to construct a passageway, or crossing, over or under the railroad for his convenience in passing from one part of his land to the other. That right is, however, usually reserved, or given by

statute, and the condemnor is, as a general rule, by the statute required to construct and maintain such crossings. For the same reason an owner may maintain irrigating ditches, if he has any, across the condemned right of way, and the condemnor, in mitigation of damages, may agree to maintain said ditches and keep them in good repair and prevent any interference with their use.

The cases cited, and many others, go no farther than to apply the doctrine stated in Cyc. There are cases, however, in which it is directly held that the owner may **3** not encroach upon the condemned property and may not make any use thereof without the consent of the condemnor which would deprive the latter of possession or otherwise. That doctrine is illustrated by the Supreme Court of Minnesota in the case of *Hopkins* v. *Chicago, St. P., M. & O. Ry. Co.*, 76 Minn. 70, 78 N. W. 969, and by the Court of Civil Appeals of Texas in the case of *Olive* v. *Sabine & E. T. Co.*, 11 Tex. Civ. App. 208, 33 S. W. 139, and cases cited in those two cases. There is, however, also authority to the effect that the condemnor may not, without the consent of the owner, mitigate the damages by offering the owner conjoint possession or use, or by offering him other property equally suitable as for use. The doctrine is stated by the Supreme Court of Missouri in the case of *Chicago, S. F. & C. Ry. Co.* v. *McGrew*, 104 Mo. at page 298, 15 S. W. 935, in the following words:

"No sufficient reason can be seen why, by agreement between the parties interested, certain rights, not inconsistent with the public interest, might not have been reserved by the landowner so as to secure to himself a limited use of the right of way, under such circumstances as existed in this case. Yet such a reservation must have been by consent of both parties; neither could have been required to grant or accept them. Defendant was entitled to compensation in money, and could not, without his consent, have been required to accept in lieu thereof licenses or privileges, however beneficial to him they may seem to be."

The doctrine announced by the Supreme Court of Missouri, it seems to us, must commend itself to every fair-minded lawyer. It may well be asked, how can the Legislature or the

courts, in mitigation of damages, compel the owner to enter upon a conjoint possession or use with the condemnor of the condemned property? If the condemnor did make an application to condemn property and with the end in view of lessening the damages only sought a conjoint possession with the owner, no court, we think, would listen to him, unless the owner of the property, as suggested by the Supreme Court of Missouri, would consent to such an arrangement.

Nor does the foregoing doctrine in any way affect the rule laid down in the cases cited above, that where the owner claims special damages because he is deprived of a crossing or passageway, or where he contends his irrigating ditches, etc., are interfered with, or where he claims that by reason of the extent and area sought to be condemned he is specially injured, that the condemnor may, in mitigation of damages agree to construct and maintain proper crossings, or may agree that he will preserve and keep in repair the irrigating ditches, or may agree to limit the area sought to be condemned and fix its limits within those first proposed. To do that, however, does not constitute a joint possession and use of the condemned property, except at the crossings and at the places occupied by the irrigating ditches. Where the area of the property sought to be condemned is lessened, as above suggested, the owner is again given full and exclusive possession of all that portion which is excluded and that is thus restored to him. Such is not the case, however, where a conjoint occupation and use are proposed. As the offer in this case discloses, the owner's possession and use would still have to be subject or subordinate to the use of the condemnor. In our judgment the law does not require the owner to submit to such a conjoint use without his consent.

We do not wish to be understood, however, as laying down any hard and fast rule regarding the respective rights of a railroad company and the owner of property over which a right of way is condemned for railroad purposes. All we now do or attempt to do is to pass upon the facts presented in this case, and shall leave the determination of the respective rights between owner and condemnor as they may arise in the future in accordance with the facts and circumstances of

the particular case.   From what has been said it follows that the court did not err upon the first proposition.

Nor do we think there is any merit to the second proposition, namely, that the plaintiff had the right to make the amendment as a matter of course.   The order for possession was still in force, and this is not a case where the plaintiff merely desired to curtail or reduce the area sought to be condemned, as before suggested.   The proposed amendment included much more, and, in view of all the allegations of the complaint and the order of possession, it would have constituted a gross abuse of discretion and fatal error to have permitted the amendment, over the objection of the defendants, without the imposition of terms.

Nor can the third proposition be maintained.   Under the circumstances, it was the court's duty to protect the interests of the defendants as well as to consider those of the plaintiff.   The case had already been tried twice so far as the defendants were concerned.   The action was pending for nearly five years when the amendment was proposed, during all of which time plaintiff, under the order of the court, had the possession of the ground, and, in view that the defendants, in case the amendment were allowed, would be compelled to expend large and additional sums of money to defend the action, the court very properly exercised its discretionary power in imposing the terms complained of.  Upon that point see *Williams* v. *Myer,* 150 Cal. 714, 89 Pac. 972, and *Jones* v. *Stoddart,* 8 Idaho 210, 67 Pac. 650.   In our judgment the terms imposed in the California case just referred to, under the circumstances there, were much harsher than were the terms imposed in this case.   Indeed, if, under all of the circumstances disclosed by this record, the court had unconditionally denied the application to amend at the time and under the conditions it was proposed it would not have been an abuse of discretion, and the plaintiff would have no legal cause to complain.

A number of assignments relate to the giving of instructions and to the refusal to instruct as requested.   In view of the conclusions hereinbefore stated there is no merit to any of those assignments for the simple reason that the instruc-

136 . SUPREME COURT OF UTAH. [Dec.

Bingham & G. R. Co. v. N. Utah M. Co. of Bingham et al., 49 Utah 125.

tions given merely conform to the law hereinbefore stated, while the requests refused are merely in support of plaintiff's theory, which we have held cannot prevail.

Several of the assignments relate to the admission and exclusion of evidence during the trial. We have carefully read the record, and we consider the rulings of the district court which are complained of as being well supported by the established rules of evidence, and further consider them as fair and quite unobjectionable.

It is further contended that the court committed error in its rulings regarding the measure of damages, both as to those claimed by the lessee and as to those claimed by the mining company. We are of the opinion that the rulings complained of in that regard are well within the rule laid down by the Supreme Court of the United States in the case of *Montana Ry. Co.* v. *Warren,* 137 U. S. 348, 11 Sup. Ct. 96, 34 L. Ed. 681. See also *Noyes* v. *Clifford,* 37 Mont. 138, 94 Pac. 845, and *Wilson* v. *Harnette,* 32 Colo. 172, 75 Pac. 395.

While we have refrained from discussing the many errors assigned in detail, yet, in what we have said, we have substantially covered all of the assignments which in any way could have affected any of the substantial rights of the plaintiff. It is only due to counsel to say, however, that many of the assignments were presented to this court because of the theory that plaintiff's counsel entertained with regard to the rights of the plaintiff in the premises, which theory we have been unable to sustain.

For the reasons stated, both of the judgments are affirmed with costs to the defendants.

STRAUP, C. J., and McCARTY, J., concur.