SHURTLEFF et al. v. SALT LAKE CITY.

No. 5805.   Decided August 23, 1938.   (82 P. 2d 561.)

Rehearing denied December 19, 1938.

22

*Badger, Rich & Rich,* of Salt Lake City, for appellants.

*Fisher Harris,* City Atty., *E. R. Christensen,* and *Gerald Irvine,* Asst. City Atty., all of Salt Lake City, for respondent.

PRATT, District Judge.

An appeal by plaintiffs Shurtleff. In 1932 they instituted this suit against the defendant City to enjoin the latter's interference with their water rights in Big Cottonwood Creek of Salt Lake County, Utah, and to recover for damages to their crops, trees and livestock for the years of 1928, 1929, 1930, and 1931. The lower court denied them an injunction and awarded them $48 damages. In addition, that court awarded plaintiffs $6,250 damages as compensation for the permanent interference with their water rights. No pleadings were filed raising an issue as to the last award.

The natural water of Big Cottonwood Creek is clear and of culinary quality. It has been taken by the City and is now used as part of its waterworks system. The City substituted therefor water from Utah Lake conveyed to Big Cottonwood Creek by a canal. This water is not fit for human consumption but may be used for irrigation. It has an offensive odor and carries a sediment which makes it grey in color and leaves a deposit upon lands or ditches over or through which it flows.

The following quotations taken from the decree of the trial court in the case of *Big Cottonwood Tanner Ditch Company* v. *Shurtliff,* 49 Utah 569, 164 P. 856, described plaintiffs' water rights:

"* * * twenty thousand gallons of water per day, delivered at the point of use, would be an abundance for the Shurtliff house-

hold and all their cattle, horses and poultry. Cattle in the pasture may drink directly from the South Branch of the Tanner Ditch * * *"

"* * * in addition * * * are entitled to receive through the South Branch of the Big Cottonwood Tanner Ditch, from the 1st day of January until the 30th day of June of each year, forty-one shares of water right, and from the 1st day of July to the 31st day of December of each year, twenty-nine shares of water right. * * *"

The Big Cottonwood Tanner Ditch Company owns most of the water rights on the Tanner Ditch. In addition to the Shurtliffs, there are a few other users who are not members of the Company. In the year 1920, an agreement was entered into between the City and the Ditch Company, the pertinent parts of which are:

" * * * Whereas, the City is desirous of exchanging water with the Company for the purpose of using said Big Cottonwood Water for culinary purposes in Salt Lake City and of furnishing the Company water for irrigation purposes as hereinafter set forth and for the purpose of bringing about an exchange and looking also to the future development of the area. * * *"

"* * * the Company hereby grants, conveys and transfers to the City the right to have, take and use perpetually from the Big Cottonwood Creek in Salt Lake County, State of Utah, all that portion of the waters of said Big Cottonwood Creek to which the Big Cottonwood Tanner Ditch Company is now, or, at any time may be entitled. * * *"

"* * * The City shall furnish and deliver to the Company irrigation water, that is, water suitable for irrigation purposes from any available source, the source being in the option of the City," (The City furnished Lake water), "and at such place or places as may be required by the Company and in a continuous flow during the months of April, May and June of each year, the quantity of water equal to that quantity to which the Company is or may be entitled as its proportionate share of the flow of the Big Cottonwood Creek. * * *"

The plaintiffs and defendant never settled their differences over the water plaintiffs used for irrigation purposes. Plaintiffs did, however, accept the 20,000 gallons of water per day for culinary, domestic and stock purposes from the City mains as extended to their property. The exercise by the City of its rights under the agreement with the Company necessarily interferes with the delivery to plaintiffs

of irrigation water of culinary quality. There are times now
when the water that comes down the Tanner Ditch is either
solely Lake water or mixed water from both the Lake and the
Creek. There is some evidence in the case that this inter-
ference may be overcome by the construction of a ditch from
Big Cottonwood Creek to plaintiffs' land.

The case was tried in two separate hearings. At the end
of the first, the court stated that if agreeable to the parties
it would take up the matter of plaintiffs' damages suffered
as a result of the City's action under the exchange agree-
ment, and, if it did this, then:

"* * * the plaintiffs shall elect to determine whether they want
this court to determine what damages they have suffered by vir-
tue of the exchange agreement and the interference with their rights
arising therefrom on either one of two bases.

"First, on the basis of the difference in the value of their land with
the water rights as they were before the exchange and without any
water rights except the 20,000 gallons per day of culinary water, or,

"Second, the difference in the value of their land as it was before
the exchange and the value of their land as it is with the distribution
that they have under the exchange, * * *

"In other words, if they accept the first alternative of the measure
of damages, it shall be the value of their water rights as used on the
land for irrigation as measured by the actual value of the land with,
as compared with the land without said rights. * * *

"* * * If the plaintiffs elect to settle their damages on the second
of the above two bases, then the City shall * * * install a pipe line
from the Shurtliffs' culinary water line from some convenient point
on the messuage to a trough at some convenient point on the pasture
land. * * *

"* * * If the plaintiffs elect to have the damages awarded under
the first basis above named, the City shall be exonerated from install-
ing said pipe line and trough. * * *" (The division of the quotation
into paragraphs is ours.)

The court further said that if plaintiffs were unwilling to
agree to this, a permanent order denying the injunction
would be entered.

Pursuant to this statement, plaintiffs, under protest, and
without waiving their rights as they claim, made an election
from which we quote:

"* * * plaintiffs hereby elect, under protest, as aforesaid, to have a determination of the difference in value of their land with the water rights as they were before the 'exchange' and the value of their land without any water rights, except the twenty thousand gallons per day of culinary water" (the first basis),

"and plaintiffs hereby request, under protest, as aforesaid, this Honorable Court to have the amount of damage assessed by a jury,

"and that the proceedings, measure of damages and other rights of the parties to said action be and conform to the provisions of Chapter 65, Compiled Laws of Utah 1917, relating to eminent domain, and other laws relating thereto, and Article 1, Section 22 of the Constitution of the State of Utah, and not otherwise;

"and if the court declines to comply with said request for a jury determination of such values in order to expedite the proceedings herein, and to secure speedy and final review thereof, and without waiving any of plaintiffs' reservations, protests and exceptions, plaintiffs place themselves in the hands of the court and ask for a prompt termination of the remaining proceedings herein, and that the court itself determine the value of plaintiffs' property. * * *" (This quotation is also divided into paragraphs for ease in reading.)

After the last hearing, the court made findings of fact and conclusions of law in which we find this:

"* * * and plaintiffs are entitled to judgment against defendant for the sum of $6250.00 or the sum of $2050.00 plus 29 shares of the capital stock of Big Cottonwood Tanner Ditch Company available for use on the South Branch as the difference between the value of their lands with their water rights uninterfered with and its value deprived of irrigation water from July 1st to April 1st of every year hereafter, and defendant is entitled to elect as to which judgment it shall satisfy, but if it shall make no election on or before thirty days after July 18th, 1933, then judgment shall be rendered against it in the sum of $6250.00, and that except as to said irrigation water defendant be enjoined from interfering with said water rights; that otherwise than aforesaid no injunction herein shall issue. * * *"

The judgment as finally entered was for the $6250.

Plaintiffs' request for a jury and proceedings pursuant to the laws of eminent domain was denied, although at one time during the hearing the court indicated it might grant proceedings as requested, but would continue the matter to September if the request were insisted upon. Plaintiffs objected to the continuance.

Numerous errors have been assigned. We shall discuss them without specific reference to the individual assignments.

What damage does one suffer when his property is taken for public use? He loses the value of the property taken; and he may lose value in his remaining property by reason of the taking. Undoubtedly, it is true that there are circumstances under which the property taken does not possess the value claimed for it. Let us assume that plaintiffs' land and water rights were located in a small farming community wherein there was a surplusage of water for culinary purposes. Suppose in that locality their water rights were destroyed in the construction of a public power dam. It would be reasonable to believe that under such assumed circumstances there would be no demand upon the market for plaintiffs' water rights for culinary purposes; and experts called upon that question would probably so testify. In the present case, however, their property is located near a large city. The city has taken the water for culinary purposes. Is it not reasonable to believe that experts called upon the question here would testify that there is a demand for those water rights for culinary purposes? Would not a prospective purchaser of plaintiffs' property be influenced by the fact that such a demand by the city may arise as has arisen in this case? In other words, if there is a demand on the market for those water rights, because those who make the demand think the rights can be put to more valuable use and are therefore willing to pay more for them, the owner is entitled to the benefit of that demand even though his own use of the rights may be limited. It is our opinion that plaintiffs should have been permitted to submit evidence in support of that element of damages. 10 R. C. L. 131, Sec. 115 and note 18. The rule as applied by the lower court, in effect, though there was considerable confusion in its application, limited the damages to the losses suffered to the remaining property by reason of the taking.

When plaintiffs elected to take damages under the lower court's first proposed basis of award, they in effect said that they would part with their rights if they were paid the reasonable value thereof, and paid· such damage as they might suffer by reason of the taking of those rights. Thus, when judgment was entered to conform to this election, plaintiffs would no longer be entitled to the use of the waters in the Tanner Ditch whether Lake or Creek water. They could not dispose of their rights and retain them too. That being the case, it was improper to assume, as was done in some of the hypothetical questions to experts, that after the Creek water was gone, plaintiffs would be using the Lake water. Such assumption in those hypothetical questions had the effect of decreasing plaintiffs' losses, from being deprived of the Creek water, by the amount of increase in value of the land plus Lake water over the value of the land without any water. It would be compelling plaintiffs to take in lieu of part of their damage in money, part in rights to the Lake water. Incidentally, this was the lower court's second proposed basis of award which plaintiffs did not elect. This court has held that just compensation for property taken for public use means compensation in money; that it would make no difference how valuable the property that was contemplated as a substitute is, it could not be substituted in lieu of money, against the wishes of the condemnee. *Bingham & G. Ry. Co. v. North Utah Min. Co. of Bingham,* 49 Utah 125, 162 P. 65.

Nor can a substitution be accomplished on any theory of benefits to plaintiffs' land by reason of the taking. As an illustration: Assume that from a larger tract of land a small piece is taken for highway purposes. The owner cannot be said to have been benefited by the taking, by reason of the fact that the condemnor offers him another piece of land as a substitute for the piece taken. He may be benefited by the construction of the highway near his land quite aside from the fact of whether or not he actually uses that highway. In the present case plaintiffs

cannot be said to have benefited by the taking, by reason of the fact that the City offers Lake water as a substitute for the Creek water taken; but they may be benefited by the maintenance of the City water system, whether culinary or irrigation, near or over their land quite aside from the fact of whether or not they actually avail themselves of the use of the system.

What has been said of the assumption of the use of Lake water on plaintiffs' land applies equally well to the assumption in the hypothetical question of the existence of a pipe line and trough in plaintiffs' pasture for cattle watering purposes. However, plaintiffs are not free from fault as to this assumption. When the court did not include it in the questions, they called its attention to the omission and requested that it be put in. This assumption was also contrary to the court's first proposed basis of award. It was specifically excluded from that basis.

We find no error in the denial of the injunction in this case. Plaintiffs have known for a number of years of the taking of the Big Cottonwood Creek water by the City, and have accepted certain benefits incident to the construction of the City waterworks system near their property. It was not sufficient for them to merely protest against what was being done if they desired to avail themselves of the equitable remedy of an injunction. Having acted as they did they cannot complain of the court's denial to them of the form of relief they sought. This does not mean, however, they have forfeited title to their water rights. Having acquired jurisdiction of the case, the court was justified in offering to them a form of relief which was most equitable for all parties concerned. The court might, if the evidence justified it, have concluded that the City should convey plaintiffs' water to them by another route than the South Branch of the Tanner Ditch, such as was suggested in the testimony concerning the building of another ditch from Big Cottonwood Creek to plaintiffs' property; but evidently the court concluded that the remedy which was

most equitable as between the parties was to compel the City to pay to plaintiffs the value of the property taken, and such damages as they may have suffered incident to that taking.

We believe, however, that it was error for the court to adopt that form of relief without directing the filing of pleadings necessary to raise such issues. It is fundamental that a court cannot judicially determine an issue which has not been submitted to it in pleadings. Of necessity, the court must find upon every material issue joined. In this case, findings were made by the lower court which were not within any of the issues contemplated by the pleadings then on file in this case. *In re Evans*, 42 Utah 282, 130 P. 217; *Miller* v. *Johnson*, 43 Utah 468, 134 P. 1017, 48 L. R. A., N. S., 294; *La Bee* v. *Smith*, 64 Utah 242, 229 P. 88.

Complaint is made of the lower court's refusal to grant a jury trial. We think under the circumstances of this case plaintiffs are not in a position to raise that point as an error. In their written election of the court's first proposed basis of award, they specifically invite the court to try the case itself should it deny the jury trial. Had they wished to save their record upon the refusal by the lower court to submit the case to a jury, it was only necessary for them to make a demand, and, if that demand were denied, to say no more; but they are not permitted to invite action by the court and then cite it as error.

Plaintiffs argue that they were compelled to accept these damages by reason of the lower court's threat of an unconditional denial of injunctive relief to them. Under the pleadings as submitted, the lower court was expected to either grant or deny the injunction according to its view of the evidence. We have heretofore indicated that it was proper under the circumstances to deny the injunctive relief. Thus, that court merely indicated that if plaintiffs did not wish to accept damages for a permanent interference with their water rights, it would do what the evidence justified its doing. Its offer, then, rather than

being to plaintiffs' detriment, was to their advantage. They are hardly in a position to complain of the court's desire to give them that relief. The court had acquired jurisdiction of the case and the parties to it; and in the interest of justice and to avoid repeated periodical suits for damages, it was justified in proposing a final determination of the matter in the one suit. A similar principle is found in the case of *Kinsman* v. *Utah Gas & Coke Co.*, 53 Utah 10, 177 P. 418, decided by this court.

When the lower court in its conclusions found that plaintiffs were entitled to $6,250 damages, it should have stopped there. To conclude that in lieu thereof they were entitled to a less sum of money plus certain shares of stock was erroneous for the reason that it was an effort to substitute, as part of plaintiffs' damages, other property, which, as we have heretofore pointed out, could not be done without plaintiffs' consent. Especially, it could not be done by giving the defendant instead of plaintiffs the option of determining what plaintiffs should receive. However, this error was not prejudicial to plaintiffs in view of the fact that the final judgment entered was for the $6,250.

We are of the opinion that that part of the judgment awarding plaintiffs $6,250 damages should be set aside for lack of pleadings to support it, and for the reason that under the theory adopted by the lower court plaintiffs were not afforded the opportunity of producing evidence upon the market value of their water rights for culinary purposes.

The judgment is reversed and the cause remanded to the lower court with directions to re-try the issues pertaining to such damages upon pleadings prepared by the parties in conformity with this opinion, and upon the principles herein set out. Appellants to recover costs.

HANSON and LARSON, JJ., and ROGER I. McDONOUGH and P. C. EVANS, District Judges, concur.

FOLLAND, C. J., and MOFFAT and WOLFE, JJ., being disqualified, did not participate herein.